176 So. 334

## ARMOUR & CO. et al. v. CARTLEDGE.

### 6 Div. 28.

Supreme Court of Alabama.

Oct. 7, 1937.

Rehearing Denied Oct. 28, 1937.

Coleman, Spain, Stewart & Davies and Frank M. Young, all of Birmingham, for appellants.

J. P. Mudd, of Birmingham, for appellee.

FOSTER, Justice.

This is an action for personal injuries sustained by plaintiff in a collision between the Austin truck which he was driving and a Ford truck driven by defendant Claude Williams for defendant Armour & Co., on a public highway extending from Birmingham eastwardly toward Gadsden, at a point east of Roebuck Club toward Huffman. Defendant's truck, which we

will call the Ford, was traveling westwardly toward Birmingham and the Austin in the opposite direction. It was not a head-on collision, but the front left side of the Austin and rear left side of the Ford collided in the highway.

The theory and evidence of plaintiff was that the Austin was traveling on the right side of the paved portion of the road, which had no center line marked, and that the Ford was traveling in the opposite direction meeting the Austin, but with its left wheels about two feet across what was supposed to be the center, at a point in the road making a gradual curve to the right toward Birmingham, or the west; that the Ford approached too close, plaintiff thinking he would turn any time, and finally did make a sharp turn to his right, but too late to prevent a collision, though plaintiff remained on his right to the time of the collision.

Defendant's evidence tends to show that both trucks were approaching each on his right side of the road, and, when the Austin suddenly turned to its left so close to the Ford, that though the Ford made a quick turn to its right, the collision could not have been avoided.

Much evidence was offered as to both aspects by eyewitnesses and photographs, and description of the conditions as they appeared after the collision.

Appellant moved for a new trial because the verdict for plaintiff was contrary to the great weight of the evidence. The court overruled that motion, and such ruling is here sought to be reviewed with great emphasis.

### Assignment No. 30.

But we cannot agree with appellant that the evidence is such that we should reverse the trial court in that respect. It was a clear-cut jury question, which could be decided either way. We do not think that a discussion of the evidence would serve any useful purpose.

### Assignment No. 29.

The bill of exceptions shows the following on page 372 of the transcript: "Mr. Mudd: Now, let's see what they did. It is undisputed—they admitted it— that it was Armour & Company called them up and they got out there within an hour and while that man was lying in the hospital unconscious over there they were building up their defense to deny this man here recompense for his damages and are willing to pay doctors fifty dollars to come in here and testify and spend money like water. What? To beat this man, out of his damages that he is due. Now, that is what it is. Now, I say to you, I don't care what witnesses they got. They took pictures and interviewed fourteen or fifteen men out there. I don't know how many men they interviewed out of that fourteen or fifteen that told them a different story. I guess they told them a different story. They didn't bring them in here."

The objection does not relate to a specific feature of that excerpt. The argument here is directed to that part of it relating to the payment by defendant to doctors and spending money "like water" to beat plaintiff. But it was only after counsel had left that subject and was discussing something else that objection was made not to any certain remarks of counsel but only "to that line of argument," presumably referring to the line he was then pursuing. The particular line he was then pursuing was not objectionable nor is it urged here as so by appellant's counsel. We see no error in this ruling.

### Assignments 21, 22, and 23.

Appellant requested charges, separately, that plaintiff is not entitled to recover any damages for medical expenses, doctor's bills, or hospital charges. Such damages were claimed in the complaint. The evidence shows that plaintiff was treated by doctors, using medicine, and spent several weeks in a hospital. It does not show that he paid or incurred any substantial amount for such services. We have no right therefore to assume that more than nominal damages were included. The charges did not seek to limit the recovery to nominal damages in respect to those items. In the form in which they were asked, the court refused them without prejudicial error. Walker County v. Davis, 221 Ala. 195 (19), 128 So. 144; Thomas v. Carter, 218 Ala. 55 (13), 117 So. 634.

### Assignments 17 and 18.

The court refused charges by which plaintiff's recovery should not include compensation for his likelihood of future suffering.

Appellant argues this in one aspect on the theory that it is special damages

and should be specially claimed. But the complaint does allege that plaintiff is liable to suffer in the future additional damages as a proximate result of said brain injury, and that his earning capacity was permanently impaired. Birmingham Electric Co. v. Cleveland, 216 Ala. 455, 113 So. 403.

When from the evidence an idea of such suffering has no substantial basis, but is purely speculative, no recovery is permissible on that account. It is thus stated in 17 Corpus Juris 1075, § 381: "When there is evidence in the case that there will be future effects from an injury, an instruction which justifies an inclusion of them in an award of damages is proper, as, for example, an instruction permitting a recovery for future pain and suffering. * * * Such an instruction must be so framed as not to permit a recovery for mere speculative consequences." And this is particularly true when the evidence supports a claim of permanent injury. South & N. Ala. R. R. Co. v. McLendon, 63 Ala. 266; Bay Shore R. R. Co. v. Harris, 67 Ala. 6; Birmingham R. L. & P. Co. v. Wright, 153 Ala. 99, 44 So. 1037; Birmingham Electric Co. v. Cleveland, supra.

So that, if there is evidence from which the jury could find that there was a "likelihood" that plaintiff would suffer in the future from his brain injury, the claim for such damages would not be speculative or abstract. Indeed, both the charges in question (52 and 53) seem to be predicated on the assumption that there was a likelihood that he would suffer in the future. When so, such recovery is not speculative but permissible.

Our later cases hold that, for impaired earning capacity, physical and mental pain, disfigurement, it is difficult to furnish a standard for measurement in money, and, without such standard, plaintiff is not confined to nominal damages. Birmingham Electric Co. v. Cleveland, supra; Walker County v. Davis, supra.

## Assignments 58 and 59.

These assignments are grouped with 17 and 18, and also many others, all argued together by appellant. In them the doctors were allowed to testify what were the consequences that might be expected from such an injury as plaintiff sustained: also that it cannot be told definitely what consequences will follow; but that there might result such effects as epilepsy, loss of certain senses; and followed with an expert analysis of conditions which produce such effects.

It will be noticed that the problem is the present evaluation in money of his condition, existing after the accident. A possibility of certain results would not show as much present compensable condition as a probability or other more certain consequence. But such possibility would shed some light on the question of more or less value as explained by the expert. Not that plaintiff can recover for such possible consequences, and the charges were not so framed. But the evidence is admissible to shed light on the value of a condition then existing. The jury will take that along with the other evidence in justly appraising that condition.

Many of the answers are not objectionable on the contention of appellant, but give more detail of probability than the question quoted in brief from the record would suggest. They were a part of a cross-examination.

We do not think the charges refused—assignments 17 and 18—on the evidence given in respect to the matters we have discussed, show reversible error.

## Assignments 120 and 121.

When defendant Claude Williams, who was operating the Ford truck on the occasion in question, was being examined by defendant's counsel, he was asked to state whether or not, on the occasion of the collision, he did the most effective things to stop his car, and in another question, if he did the most effective things to avoid the accident. He had answered interrogatories propounded to him as a defendant by plaintiff, and plaintiff had introduced them in evidence. In his answers so in evidence, he had stated, "I did everything in my power to avoid a collision." Aside from the fact that the statement just quoted was probably a complete answer to both questions, and that whether he did the most effective things to avoid the accident may not be subject to the rule which would allow one skilled in the operation of the car to say that he did the most effective things to stop the car, Jones v. Keith, 223 Ala. 36, 134 So. 630; Birmingham R. L. & P. Co. v. Hays, 153 Ala. 178 (4), 44 So. 1032; Choate v. So. R. R. Co., 119 Ala. 611, 24 So. 373; Alabama G. S. R. R. Co. v. Linn,

103 Ala. 134, 15 So. 508, the court will not be put in error in that respect, when his evidence shows what he did, and there is no contention that, if he did that, as a skillful operator, he should have also done something else, which he neglected to do.

There was in this case a controversy as to what the operator of the Ford truck did, not what he should have done to stop his truck or to 'avoid the collision. All agree as to what his duty was, so far as anything to the contrary appears, but not as to whether he did it. It was therefore unnecessary to make proof of what his duty was. The law fixes his duty in large measure. The general rule is that an expert can testify what is the most effective way of stopping a car. But, when his way of doing so is not disputed as being the most effective, but the dispute is as to whether he did it, no prejudice results from a refusal to allow him to state what is the most effective way. However, as we have said, he testified that he did everything in his power to avoid the collision. That answers the questions to which we have referred.

### Assignments 110, 111, and 118.

The errors here assigned relate to expert opinions in response to hypothetical questions. The point is made that some of the matters hypothesized were not shown by any aspect of the evidence. That is a sound contention, if based on that situation. But appellant has evidently misconstrued the questions to hypothesize certain facts supposed to exist after the collision, when in fact they evidently refer to conditions then existing or which existed prior to that time. With that interpretation of the questions, they were not subject to the objection which is here urged.

### Assignments 93, 94, 95, and 96.

These assignments relate to rulings on objections made by appellant to questions propounded on cross-examination to appellants' witness Loveless. This witness was driving a car following the Austin and saw the occurrence, and gave evidence favorable to defendant. The questions here referred to call for, first, the purpose or motive of the witness in driving as he did in respect to the collision; second, whether he realized or felt danger which caused him to run his car off the road; and, third, that the cause of his concern was the truck coming on the left side.

The rule is well understood to be that ordinarily one cannot prove by a witness on direct examination what were his motive, purpose, fear, or other mental operations. But on cross-examination a witness may be asked as to his reasons for certain acts of his, and his motives and intention in respect to his conduct. 70 Corpus Juris 636, 637; General Accident, Fire & Life Assur. Corp. v. Jordan, 230 Ala. 407 (9), 161 So. 240; Dismukes v. Trivers Clothing Co., 221 Ala. 29, 127 So. 188; Patton v. State, 197 Ala. 180, 72 So. 401; Hill v. State, 156 Ala. 3 (5), 46 So. 864; Linnehan v. State, 120 Ala. 293, 25 So. 6; Williams v. State, 123 Ala. 39, 26 So. 521; Yarbrough v. State, 115 Ala. 92, 22 So. 534.

The questions referred to in those assignments and their answers were permissible under this rule.

### Assignments 72, 73, 77, 78, 87, 88, 89, and 90.

These assignments are all treated as involving kindred propositions. They all relate to questions propounded on cross-examination of defendants' witness Dr. Williams, and sought to ascertain his expert opinion in respect to symptoms manifested by plaintiff after the accident and while in the hospital. They were proper in every respect.

### Assignments 53, 54, 55, 56, 97, 98, 99, 100, and 101.

These questions call for the opinion of medical expert witnesses as to whether a person with certain ailments was a proper person to drive or operate an automobile. Aside from the fact that there was no statement from counsel as to what he expected the witness to answer, we do not think that a medical expert has such peculiar knowledge of the operation of an automobile that it is competent for him as an expert to testify whether a person physically strong enough to drive one is a proper person to do so by reason of certain brain and muscular reactions to whose effect he has fully testified. Whether such reactions disqualify him, being otherwise fit, from operating a car is, in a legal status, similar to that of whether a person whose mind is defective in certain respects is disqualified from executing a valid will. Camp v. Dobson, 228 Ala. 32, 152 So. 38; 9 Ala.Digest p. 455, Evidence, ⊂⊃506.

Further illustrations of the principle are shown in the following authorities: Louis-

650

ville & N. R. R. Co. v. Elliott, 166 Ala. 419 (2), 52 So. 28; Weller & Co. v. Camp, 169 Ala. 275, 52 So. 929, 28 L.R.A.(N.S.) 1106; American Nat. Ins. Co. v. Rosebrough, 207 Ala. 538, 93 So. 502; Equitable Life Assur. Society v. Davis, 231 Ala. 261, 164 So. 86; City of Montgomery v. Wyche, 169 Ala. 181 (12), 53 So. 786; Adler & Co. v. Pruitt, 169 Ala. 213 (7), 53 So. 315, 32 L.R.A.(N.S.) 889; 22 Corpus Juris 642, 643, note 51.

The questions referred to were asked on direct examination, not to test the knowledge, experience, or accuracy of the witness, nor to obtain any scientific information, but as testimony thought to be relevant to the main issue. Distinction naturally exists between that situation and one in which such questions are propounded on cross-examination of any expert witness, material to a proper interpretation and weight to be accorded the evidence of that witness given on his direct examination. For the reasons we have assigned, not considering others, we do not think there was reversible error in declining to permit the questions to which we have here referred.

Appellants' counsel have argued other assignments of error, but we think they are without merit and do not need discussion. We have treated those which seem to merit discussion.

Finding no reversible error among the assignments which appellants have argued, the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.