177 So. 881

**CAPITAL MOTOR LINES v. GILLETTE.**

3 Div. 223.

Supreme Court of Alabama.

Nov. 26, 1937.

Rehearing Denied Jan. 13, 1938.

158

Thos. E. Martin and John B. Scott, both of Montgomery, for appellee.

John S. Tilley and Hill, Hill, Whiting & Rives, all of Montgomery, for appellant.

BOULDIN, Justice.

Action in damages for alleged personal injuries received in a collision of motor vehicles on a public highway.

Defendant Capital Motor Lines was operating a bus on Montgomery and Mobile Highway, as a common carrier of passengers for hire.

Plaintiff, Mrs. Frank A. Gillette, was a passenger on this bus, going from Montgomery toward Mobile. At a point a few miles north of Fort Deposit, another accident had occurred, wherein an automobile had catapulted from the highway. Some cars had stopped near the scene of the accident, and several men were standing along the railing to the right of the paved portion of the highway as the passenger bus approached. A truck of Standard Oil Company, of Kentucky, headed toward Montgomery, had stopped on the other side, occupying some portion of the paved highway. The driver of the passenger bus slowed down and came to a stop after passing some ten to twenty feet beyond this Standard Oil truck. The bus stopped on the pavement occupying some eight feet of the pavement, nineteen feet in width. The driver of the bus, on coming to a stop, called to the bystanders to ask if any one was hurt, and could he be of assistance.

Presently another truck, driven by one Leonard, and headed in the same direction as the bus, collided slightly with the Standard Oil Company truck on its left, and then with the bus, on its right. The extended body of the Leonard truck crashed into the rear-left side of the bus, shooting the bus forward some twenty feet. This outline of the facts, not in substantial dispute, suffices as a sufficient introduction to the consideration of the questions presented on appeal.

The case went to the jury on counts 5, 6, and 7 of the complaint. Appellant assigns for error the refusal of the affirmative charge on the entire case, and like charges addressed to the several counts. These assignments are earnestly pressed in argument.

Count 5 charges that the driver of the bus "negligently and unlawfully parked or left standing the said bus * * * in such manner that less than fifteen feet of the main traveled portion of the highway opposite the said parked or standing bus was left for the free passage of other vehicles," and plaintiff's injuries were proximately caused by such negligence.

This count alleges a violation of the "Law of the Road," as written in section 70 (a) of the Highway Code. Gen. Acts 1927, p. 375. A definite knowledge of this statute on the part of every motorist is so important, in view of daily experience, that we here set it out.

"Section 70. Stopping on Highways.

"(a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle, whether attended, or unattended, upon any highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of 200 feet in each direction upon such highway."

Appellant earnestly insists that the evidence makes no case for the jury under this statute, because the evidence without conflict shows the bus was stopped temporarily for a laudable purpose, the rendering of emergency assistance to persons probably in distress; that the driver was acting in the spirit of the Good Samaritan.

The evidence of the time the bus stood still on the highway varies, from thirty seconds to two or three minutes. That it was stopped temporarily to make inquiry, and offer help, if needed, we think apparent without reasonable inference to the contrary. We come then to the inquiry whether, as matter of law, stopping the bus on the highway as it was is without the statute designed to keep an open highway for the protection of the public. In this case obviously there was a duty to passengers, a first duty to exercise the high degree of care required of common carriers of passengers for hire.

The count in question further charges that by reason of the presence of the

other standing truck, the free passage of the highway was blocked by stopping the bus at that point. Evidence tends to support this averment and to show a clearance could have been provided by stopping further on.

While these incidents are of moment in dealing with an affirmative charge, in the instant case, we deem it of importance to clearly define the law applicable to stopping vehicles on the highways in general, even temporarily.

The statute is headed "Stopping on Highways." ·

To "park or leave standing," "attended or unattended," is forbidden. That one is in the car, and at the wheel, is no excuse.

Section 63 deals with bringing a moving car to a stop, requiring specified signals for the protection of those following near.

Section 70 (a) intends to keep an open highway, free of standing cars on the paved road, or, at all events, an open zone of fifteen feet. A passing vehicle may be expected at any moment, as this case sadly demonstrates. The law aims to conserve life and limb by keeping the road open as defined.

Subdivision (c) of same section deals with temporary stops in these words: "(c) The provisions of this section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position."

Quite clearly, even in case of a blowout or other car trouble necessitating a temporary stop, subdivision (a) must be complied with, if it can reasonably be done.

Appellant strongly relies on Newell Contracting Co. v. Berry, 223 Ala. 109, 134 So. 870, 872, wherein this court quoted with approval authority saying: "To 'park' means something more than a mere temporary or momentary stoppage on the road for a necessary purpose."

This must be read in connection with what follows, namely: "If the truck was allowed to remain in the road for some temporary purpose, or due to a breakdown, without the opportunity to remove it, and it was not a voluntary act of the one in charge of it, or that it was not done by one with due authority, the facts are presumed to be peculiarly known to defendant, and it should have produced them, otherwise the presumption of such matters is indulged against defendant."

In Newell Contracting Co. v. Berry, 223 Ala. 111, 134 So. 868, a companion case, decided at the same time, this court called attention to subdivision (c), § 70, especially the duty to provide lights, &c.

To take a temporary stopping without our statute, it must be "for a necessary purpose," and under such conditions that "it is impossible * * * to avoid leaving such vehicle in such position," that is, occupying traveled portion of the highway, or not leaving the clearance declared in section 70 (a). "Impossible" is to be construed in a reasonable practical sense.

The Law of the Road in Alabama is: When stopping a motor vehicle on a highway, voluntarily or from necessity, no matter how long it is expected to remain standing, the driver should turn out, and provide a clearance of fifteen feet, if practical to do so. He should not stop his car on the highway at a point where this cannot be done except for reasonable cause. In the latter case, he should get out of such position as soon as practical. Chambers v. Cox, 222 Ala. 1, 130 So. 416.

Dealing with the case in hand, the evidence made a case for the jury on this issue. The humane law, the law of the Good Samaritan, to use the terminology of the briefs, must not disregard concurrent duty to others, passengers in this case. The presence of other cars, and several men standing by, enters into the picture, when considering any emergency calling for a stop at that particular point, and under the conditions heretofore outlined.

The point is further raised that defendant was due the affirmative charge upon the ground that the evidence without conflict disclosed that Leonard was negligent in the operation of his truck, and his negligence, it is insisted, was the sole proximate cause of the collision, as matter of law.

Whether the evidence proves without reasonable inference to the contrary that Leonard was negligent, either in failing to discover the obstruction ahead, or in failing to take prompt measures to stop after such discovery, or had inadequate brakes to properly control his heavily loaded truck on a down grade, a curve, and

a wet pavement, we deem it immaterial to decide. The case properly went to the jury on the issue of concurring negligence on the part of the driver of the bus and the driver of the truck as the proximate cause of the collision, and consequent injury to plaintiff. The notion that the standing position of the bus merely created a condition on which the negligence of the driver of the truck operated as an independent intervening and efficient cause, as matter of law, is untenable.

The aim of the statute is to prevent obstructions, as a continuing menace to passing vehicles.

The inquiry as to causal negligence is directed to the moment of the collision. That the negligence of one obstructing the highway with a standing car may concur with that of one driving the moving car, though acting independently, as the proximate cause of the collision, is clear, on principle, as well as authority.

One who negligently creates a condition from which danger arises through other agencies, reasonably to be anticipated, may proximately contribute to the resultant injury.

The statute under consideration charges one obstructing a highway with knowledge of dangers incident thereto.

The principle that one is not chargeable with negligence if his conduct can become so only in the event of negligence on the part of another. has no application. One at fault cannot justify on the ground that another could have avoided the effects of his negligence, to escape liability to a third person, resulting from the concurring negligence of both.

We do not overlook decisions, such as Cooper v. Agee, 222 Ala. 334, 132 So. 173, to the effect that a violation of this statute, like the violation of city traffic regulations, may not be contributory negligence to defeat an action for personal injuries inflicted in disregard of the general duty to avoid injury to others. In the Agee Case, it appeared ample clearance was left open for the passage of cars, that the injured was behind his car, stopped because of car trouble, not wholly, but partially off the pavement, and in full view of the on coming car which struck and injured him.

The question of contributory negligence as a proximate cause was held for the jury. This, and other cases, there cited, as well as authorities generally, are founded upon the just principle that these traffic regulations, intended for the protection of life and limb, not for the protection of the careless driver, shall not be made a shield against responsibility, for disregard of general legal duties in safeguarding others. In a legal sense, it is, therefore, declared such breach of duty may be treated as the sole proximate cause of the injury. Such principle, by no means, displaces the doctrine of concurring negligence, on the part of the operators of two cars, resulting in injury to third persons, whether such negligence is in the violation of the law of the road, the law imposing a general duty of care, or both. Aplin v. Dean, 231 Ala. 320, 164 So. 737; Alabama Power Co. v. Curry, 228 Ala. 444, 447, 153 So. 634; Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 119 So. 610; Alabama Power Co. v. Bass, 218 Ala. 586, 119 So. 625, 63 A.L.R. 1; Chambers v. Cox, supra; Ruffin Coal & Transfer Co. v. Rich, 214 Ala. 633, 108 So. 596; Western Ry. Co. of Ala. v. Sistrunk, 85 Ala. 352, 5 So. 79; 45 C.J. 920.

Count 6 of the complaint was to like effect as count 5. Count 7 charged negligent stopping of the bus in such manner that there was not sufficient distance between the bus and Standard Oil truck to permit the free passage of other vehicles, etc.

What we have written is sufficient to indicate our reasons for holding there was no error in refusing the affirmative charge as to either of these counts.

One of the most important, as well as most difficult, issues in the case was the extent of plaintiff's injuries.

The visible injuries at the time were certain contusions, which soon healed. Severe shock may be also classed among the injuries discernible in much from external evidences. There were no fractures or dislocations of bone structure.

Professional evidence of attending and examining physicians introduced by plaintiff was to the effect that following the injury she has suffered from "traumatic neurasthenia." Much evidence, subjective in character, given by plaintiff, and like information entering into the physicians' examination and diagnoses, along with results or certain tests which medical science has approved as symptons of such disease,

appears in the record. Defendant also introduced physicians whose examinations disclosed no X-ray or pathological cause for such disease.

■ The extent of such injury, its probable permanency, improvement, or ultimate cure, were all matters for the solution of the jury.

After treatment in a hospital, and later at home for some two months, she resumed her work as a teacher in the public schools. With the exception of some six weeks, she has taught during school terms continuously to the date of trial, some fourteen months after the accident.

Defendant introduced Mr. L. H. Knight, principal of the Capitol Heights School, who testified that plaintiff had taught in the school under his supervision some eight years; that prior to the accident he observed no abnormality in plaintiff.

After stating that her work had been lightened somewhat since her injury, the witness said: "Plaintiff has seemed to be extremely nervous and easily excitable. Before August, 1935, plaintiff did not evidence anything of that kind to the extent that she has during the last year or two."

The record then recites: "Witness was asked 'if during the last year or at the present time she is, in your judgment, really capable of teaching school?' Defendant, Capitol Motor Lines, objected on the ground that the question called for the opinion of the witness as to the physical and mental capacity of another. The objection was overruled and an exception was reserved. The witness answered 'I do not.' Motion to exclude the answer, on the same grounds assigned to the question, was overruled and an exception duly reserved."

■ We are of opinion that in this ruling there was error. It admitted opinion evidence on one of the complex issues for the solution of the jury.

■ As a general rule, opinion evidence is not admissible touching matters the jury is as competent to judge as the witness. Even expert testimony, the general field of opinion evidence, is not admissible touching matters of common

knowledge, or outside the field of their expert study and training. Councill v. Mayhew, 172 Ala. 295, 306, 55 So. 314; Sovereign Camp, W. O. W. v. Hutchinson, 217 Ala. 71, 114 So. 684; Prudential Ins. Co. v. Calvin, 227 Ala. 146, 147, 148 So. 837; Armour & Co. v. Cartledge, 234 Ala. 644, 176 So. 334, 339, and cases there cited.

In Prudential Ins. Co. v. Calvin, supra, we held a nonexpert cannot testify that one is in good health, where this is an issue. He can only say he appeared to be so.

In Armour & Co. v. Cartledge, supra, a physician who had testified to certain mental and physical infirmities was held incompetent to testify that such person was incapable of safely driving an automobile. This on the ground that the physician showed no expert knowledge of qualifications to drive a car. His expert evidence was admitted within the sphere of expert knowledge, but the jury left to take his evidence and apply their own common knowledge and judgment in solving the question of the capability of the man to drive a car.

So, here, the witness could state the visible symptoms, including appearances, discernible by association, but it must be left to the jury to reach their conclusion in the light of all the evidence as to whether plaintiff was able to pursue her teaching profession.

We are impressed the error in admitting this evidence on a most vital issue worked probable injury to defendant, which must lead to a reversal.

■ We may add that general statements of other nonexpert witnesses, to the effect that plaintiff was not "normal" after her injury, were too indefinite, inviting the jury to speculate on the extent of her trouble. The witnesses should state the facts, showing wherein she was different. These would include appearances, reactions of any kind, which would shed light on the issue before the jury.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.