24 So.2d 138

### JORDAN v. STATE.

### 7 Div. 808.

Court of Appeals of Alabama.

June 5, 1945.

Rehearing Denied June 19, 1945.

Merrill, Merrill & Vardaman, of Anniston, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

RICE, Judge.

Appellant was tried under an indictment charging him (and another, not on trial) with the offense of murder in the first degree.

He was convicted of murder in the second degree, and his punishment fixed at imprisonment in the penitentiary for the term of eighteen years.

It is without dispute that he cut *or* stabbed, or cut *and* stabbed, with a knife, so that he died, one *Wesley Elston*.

The evidence for the State tended to show an aggravated case of murder, without mitigating or extenuating circumstances. That for appellant (defendant) tended

174

to show that he was justified in what he did by reason of self-defense—as that term was fully defined to the jury trying the case.

The evidence was in hopeless conflict, and, as the Attorney General quotes this Court as often saying: "None but a jury could unscramble the testimony and arrive at the true conclusion—a verdict."

Appellant duly filed a plea in abatement based upon the alleged fact that the Grand Jury which returned the indictment "was not drawn by the officer designated by law to draw the same and was not empaneled as required by law, and that the names of the jurors in attendance on court that week were not written on 'separate slips of paper or cards and placed in a hat or box and the names of eighteen jurors drawn from the said hat or box in open court and empaneled and sworn as the Grand Jury, as required by the Code of Alabama of 1940, Title 30, Section 38."

As to the above plea in abatement the undisputed evidence was substantially and essentially as follows: Thirty or thirty-one names of jurors were drawn by the judge who organized the grand jury in question from the jury box of Calhoun County for the purpose of organizing said grand jury. After these jurors were summoned by the Sheriff to appear on a date named in the summons, many of them were excused by the said judge, for reasons deemed by him adequate, prior to the date on which they were summoned to appear. On said date only nineteen jurors appeared.

The court then, proceeding under the terms of Code 1940, Title 30, Section 38, had these nineteen called, and excused, for reasons deemed by him sufficient, one of same—thus leaving only eighteen jurors in attendance.

The above eighteen jurors—duly qualified —were then sworn and empaneled as the grand jury which found the indictment against appellant.

■ So far as we can see the court properly gave to the jury the general affirmative charge to find in favor of the State on appellant's said plea in abatement. And we so hold. We are forced to agree with the Attorney General that "there being only eighteen (jurors) it was unnecessary to place their names in a hat or jury box and draw them out again. This would have been a vain and foolish thing."

The opinion in the case of Doss v. State, 220 Ala. 30, 123 So. 231, 68 A.L.R. 712, so confidently cited to us by appellant's able counsel, states nothing to the contrary.

If there was fault on the part of the court organizing the grand jury in excusing jurors prior to the date on which they were summoned to appear, such fault is not before us by virtue of the plea in abatement.

As matters stood, if there was technical error in not following, literally, the terms of Code 1940, Title 30, Section 38, it conclusively appears that appellant could not have been, and was not, injured thereby.

*Louis Allen,* appellant's half-brother, indicted jointly with appellant, but who was not on trial, and who, the State's evidence tended to show, began the argument with deceased, leading to appellant's stabbing deceased in the back, thus causing his death, testified at length on behalf of the defendant (appellant). His testimony was directly opposed to that given by the witnesses for the State; and tended to show that appellant acted in self-defense in cutting or stabbing *Wes Elston,* the man who was killed.

Upon cross-examination of this witness he was asked without objection if he wasn't "under indictment in this matter too." And when he answered that he "guessed so," he was asked if he didn't "leave the State and was gone about two years"; also, if the officers didn't go up in Virginia and bring him back.

■ Appellant's objections to the questions last noted—calling for information as to his leaving the State, staying away two years, and being brought back by the officers —were overruled, and exceptions reserved. But we think no error is shown.

It was cross-examination; and, in view of the conflict between the testimony of the witness and that given on behalf of the State we believe the examination of the witness as noted did not transcend the provisions of the Statute that "The right of cross-examination thorough and sifting, belongs to every party as to the witnesses called against him." Code 1940, Title 7, Section 443.

It seems to us that the argument of appellant's distinguished counsel, itself, proves the correctness of our conclusion. They say: "It was the defendant's contention that he and he alone had the argument and fight with the deceased and that *Louis Allen,* the co-defendant, had nothing to do with the matter. On the other hand, it was the State's contention that the argument

and the beginning of the fight was between the deceased and *Louis Allen,* and that the defendant later joined in the affray. It was, therefore, most prejudicial to the defendant for the court to allow the State to introduce evidence of the flight of *Louis Allen,* co-defendant, as *this would tend to show his feeling of guilt and give color to the State's contention that he participated in the affray."* (Italics supplied by us.)

As a matter of fact, appellant was allowed to testify, without objection, that he stayed in Virginia until the time he "came back here and gave up." This itself would take the point out of his contention that the trial court erred in sustaining the State's objection to the question put to him by his counsel: "Did you come back here and give up to the Sheriff?"

But any way, as to the question just quoted, it is the law that "where, on a trial for crime, the state made no effort to show flight (as here), proof that accused voluntarily surrendered himself to the sheriff the day after the commission of the crime was inadmissible as a self-serving declaration." Pate v. State, 150 Ala. 10, 43 So. 343, 344; Barnett v. State, 165 Ala. 59, 51 So. 299; Beverett v. State, 24 Ala.App. 470, 136 So. 843.

It would appear useless to further prolong our remarks. We have carefully examined the record, in connection with the elaborate briefs filed both on behalf of the appellant and the State.

It should be sufficient to say that the evidence offered on the hearing of the motion to set aside the verdict fails, entirely, to prove that there was a "quotient (and vitiating) verdict" rendered in the cause.

Likewise, it is enough to say that the objection to the argument of the Solicitor was not "specific"—as the law requires. Armour & Co. et al. v. Cartledge, 234 Ala. 644, 176 So. 334.

We can find nowhere a prejudicially erroneous action to have been taken, or ruling made, by the lower court.

Appellant was indicted in September, 1942; arrested in April, 1944; and tried on June 21st, 1944. He was ably defended.

The judgment is affirmed.

Affirmed.

CARR, J., not sitting.