50 So.2d 153

## LOUISVILLE & N. R. CO. v. MANNING.
### 6 Div. 873.

Supreme Court of Alabama.
Jan. 18, 1951.

44

Chas. H. Eyster, of Decatur, and Gibson & Gibson, of Birmingham, for appellant.

Taylor, Higgins, Windham & Perdue, of Birmingham, for appellee.

BROWN, Justice.

This is an action of trespass on the case by an employee against the master under the Federal Employers' Liability Act. 45 U.S.C.A. § 51 et seq. The case went to the jury on Count "A" of the complaint, which embodied the following averments as to the character and extent of plaintiff's injury and damage: "Plaintiff's head was badly cut, bruised and injured, and he was caused to sustain a concussion of the brain and was permanently injured, he was made sick and sore and was caused to suffer great physical pain and mental anguish, his nervous system was shocked and impaired, was permanently shocked and impaired, he was caused to lose time from his work and lost money thereby, and was caused to incur expense in and about his efforts to heal and cure his said wounds and injuries, and plaintiff was permanently disabled and was rendered permanently less able to work and earn a livelihood."

Said complaint ascribed plaintiff's injury and damage to the negligence of a servant, agent or employee of defendant, acting within the line and scope of his employment at said time and place, in negligently causing or negligently allowing said large and heavy piece of flooring to strike plaintiff on his head.

The defendant pleaded the general issue in short by consent with leave to give in evidence any matter which if specially pleaded would constitute a defense to the action, with leave to the plaintiff to reply by giving in evidence any matter which would be an answer to the matter if so specially pleaded.

On the issues formed by the averments of Count "A" and the plea interposed, the case was submitted to the jury, resulting in a verdict for plaintiff assessing his damages at $35,000.00. This verdict, on motion made in due course by the defendant, was held to be excessive by the trial court

and reduced conditionally to $12,500. Upon a remittitur being filed by the plaintiff, remitting the damages to said sum, the motion for a new trial was overruled.

The evidence was without dispute that on November 13, 1947, the plaintiff was an employee of the defendant and was working as a car repairer or carpenter, engaged with another employee of the same class, a Mr. Walls, in flooring a boxcar with creosoted gum lumber in boards 9 ft., 4 inches in length, 5¼ inches in width, and 2½ inches thick. Each of said pieces of flooring weighed from 35 to 40 lbs.

The track on which the car was situated ran generally north and south. In doing such work, the men engaged therein worked in pairs, one at each side of the car. The plaintiff's place of work was on the west side of the car and Walls' place of work was on the east side of the car. They had started work at the north end of the car and prior to the incident which is the basis of this action, had floored eight to ten feet toward the center of the car. At this point, the two workmen, acting in concert, undertook to "jack" the floor boards which they had placed in the car to make the floor tight, closing all cracks or looseness, so that it could be bolted or nailed down to a "diaphragm" or "cover plate." To accomplish the result desired, each of the workmen used a piece of the flooring timber as a "pry" or "jack" to press the flooring tightly together before it was permanently fastened. What is referred to in the evidence as a "diaphragm" we take to be a part of the framework of the boxcar level with the floor. Walls got his pry piece into the space, wedged against the diaphragm, and noticing that the plaintiff was having difficulty in getting his pry into the space, left his pry standing upright or leaning toward the center of the car, without support except the friction or wedged tension to hold it, and moved over to plaintiff's side, got in front of plaintiff with a sledge hammer and attempted to drive plaintiff's pry piece into the hole, and hit the side of plaintiff's pry piece two licks. When Walls hit plaintiff's timber, the timber which Walls had left standing in the wedged space fell and struck plaintiff

on the head, inflicting the injuries complained of. In this regard, Walls testified as follows: "I pulled mine back and left the piece of pry flooring in an angle, and I stepped over there to help him drive his board in between this cover plate so he could pull his back, and this board I had put in here slid over and hit him."

Before the jury retired, and in their presence, upon the conclusion of the court's oral charge, the defendant requested in writing the general affirmative charge for the defendant in proper form, which was refused, and now contends that "the testimony showed either that no negligence was involved in the act of driving up plaintiff's end of the plank as it was done— or that if there was any negligence plaintiff was an equal actor with Walls in committing it," and therefore the court erred in refusing said charge. In support of this contention, appellant argues, "But, it may be said, if it was not negligence to drive in the plaintiff's pry bar with the sledge, it was negligence for Walls to leave his pry bar standing. This theory, if it should be advanced is unsound for two reasons. One reason is factual—the evidence for the plaintiff affirms that it was a customary and usual practice in the business of flooring cars, and nothing in the record indicates that it was inherently a dangerous one, unless the mere fact that in this instance someone was hurt can be said to supply that element. The other is a legal reason—it was not the proximate cause of the injury. The proximate cause of an injury is the primary moving cause, which, in the natural and probable sequence of events, without the intervention of any new or independent cause, produces the injury. Clearly enough, the wedging of Walls' end of the flooring timber with a pry-board, left there to hold it, was not the proximate cause of its fall and plaintiff's injury."

This argument ignores or overlooks the very essence of the act of Walls according to his own testimony which we have quoted above. This statement shows that leaving the timber wedged without any support and going to assist plaintiff and hitting plaintiff's pry piece with a sledge

hammer was a single continuing act, and in the light of the whole evidence, presents the crucial question in this case, that is, did Walls under the circumstances, exercise the care of a reasonable, prudent man, likewise situated? Reaves v. Maybank, 193 Ala. 614, 69 So. 137; McCray v. Sharpe, 188 Ala. 375, 66 So. 441; Barbour v. Shebor, 177 Ala. 304, 58 So. 276. If it was not, his act was negligence, as measured by the common law, and the question of whether or not said act was a negligent act, was for the jury, as was the question of proximate cause of plaintiff's injury.

"The logical rule in this connection, the rule of common sense and human experience as well (if, indeed, there can be a difference between a logical doctrine and one of common sense and experience, as some authorities appear to hold), is that a person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind. 1 Shear. & R. Neg. § 29." Armstrong Adm'x. v. Montgomery Street Railway Co., 123 Ala. 233, 26 So. 349, 354; Goodwyn et al. v. Gibson, 235 Ala. 19, 177 So. 140; Louisville & N. R. R. Co. v. Maddox, 236 Ala. 594, 183 So. 849, 118 A.L.R. 1318; Montgomery City Lines, Inc. v. Jones, 246 Ala. 291, 20 So.2d 599; The G. R. Booth, 171 U.S. 450, 19 S.Ct. 9, 43 L.Ed. 234.

 On the trial all the facts and circumstances bearing and attendant upon the infliction of the injury upon the plaintiff for which redress is sought in this case were fully developed and set forth in the evidence. The plaintiff himself testified affirmatively to receiving the injury, to the environment of the occurrence and to all its concomitant and pertinent antecedents, to its cause and to the manner of its causation. The evidence was sufficient to warrant the jury in proceeding to find a verdict in favor of the plaintiff. This meets the rule established by the federal decisions and decisions of this court as to

the sufficiency of the evidence to warrant a submission to the jury in cases under the Federal Employers' Liability Act. Birmingham Belt R. Co. v. Bennett, 226 Ala. 185, 146 So. 265; Louisville & N. R. R. Co. v. Hall, 223 Ala. 338, 135 So. 466; Bowditch v. City of Boston, 101 U.S. 16, 25 L.Ed. 980.

Dr. Magruder, Jr., defendant's witness, testified that on the 13th of November, 1947, the plaintiff was brought to his office with a laceration of the scalp across the top of his head, that he gave him the usual treatment and then asked plaintiff if he felt like going back to work. Plaintiff agreed to light duty. On this examination plaintiff had no dizziness and his pupils showed no signs of brain injury. This examination revealed no signs of brain injury. On the 18th plaintiff returned to the said doctor's office, stating he was dizzy and felt like he was going to fall down. His blood pressure was 200 over 110. He was sent to the hospital where he remained until the 23rd. At the hospital X-rays were taken of his skull, which showed no evidence of fracture. He improved in the hospital and his blood pressure was 170 over 82. His pulse indicated there had not been severe injury to the brain. He was discharged on the 23rd of November and returned to the office on the 5th of December, complaining of dizziness. He was advised to take it easy at home. On the 23rd of December he returned to the office and his blood pressure was 200 over 120, one reading, and one reading 190 over 110. Dr. Magruder stated that it was thought that the high blood pressure was not caused by the accident and plaintiff was advised to rest at home. He returned to the office on the 4th of February and his blood pressure was 160 over 100, his heart and urine were all right and he was allowed to return to his job. Dr. Magruder testified that he, his father, Dr. Magruder, and his uncle, Dr. Wilson, believed that plaintiff had sustained no permanent injury. On cross-examination Dr. Magruder testified that the history of the case as he knew it coupled with the hypothetical supposition that the patient acted very abnormally in December after the accident, was very slow

to answer questions, stood and stared off into space and was slow in his responses, would indicate the possibility of some brain injury.

During the direct examination of plaintiff's lay witnesses, all of whom with the exception of Mrs. Manning were fellow employees, after they had stated their acquaintance and association with the plaintiff, were allowed to testify, as indicated below, over the defendant's objections, which were in substance that such evidence was illegal, irrelevant, incompetent, immaterial, called for an opinion and conclusion of the witness, that the witness was not qualified and called for testimony that invades the province of the jury. The questions and answers set out below were the subject of these exceptions.

During the direct examination of Mr. F. C. Hunt, who stated that he had known plaintiff for about eleven years, had worked near him and had observed him before and after the accident, he was asked the following questions and gave the following answers:

"Q. Did he appear, Mr. Hunt, to be normal before he is said to have been hurt? A. Yes, sir. * * *

"Q. Did he appear to be normal since he is said to have been injured, Mr. Hunt? A. No, sir."

During the direct examination of plaintiff's wife, who married plaintiff in 1910, the following questions and answers were offered:

"Q. Since the accident occurred has he appeared to be normal? A. He hasn't * * *

"Q. During that period of time did he appear to act normally? A. No, he was not normal."

During the direct examination of Mr. R. C. Hall, who stated that he had known plaintiff since 1943, that he was gang foreman under whom plaintiff worked and that he had observed plaintiff before and after the accident, he testified as follows:

"Q. I will ask you whether or not when he came back and worked those four days in December he acted normally? A. No, he did not act normally."

Arthur J. Ranson, after stating that he had known plaintiff for about twenty years, that he worked on the same crew with him and had observed him before and after the accident, testified as follows:

"Q. Did he act normally? A. No, sir.

"Q. He did not act normally? A. No, sir."

Mr. E. C. Beasley stated that he had known plaintiff since 1943 or 1944, that he had worked with him every day for eight months and had seen him often before and since the accident. He testified as follows:

"Q. I want to ask you, Mr. Beasley, since Mr. Manning was injured whether or not he has acted normally? A. No, sir; he hasn't seemed like himself."

G. P. Bandy testified on direct examination that he had known plaintiff about six or seven years, had worked close to him in the same shop and had had opportunity to observe him before and after the accident. He then testified as follows:

"Q. I want to ask you whether he now acts like a normal person? A. He acts peculiar to me. I would say, in other words, he acts like a crazy man to me.

"Mr. Eyster: We move to exclude the answer on the same grounds.

"The Court: I will exclude the statement 'he acts like a crazy man.' I don't know—

"Mr. Perdue: We except.

"Q. At that time did he act like a normal person? A. No, sir."

Amos Knopp testified that he had known plaintiff about four years, worked on the same line with him, and had observed him before and after the accident. In response to questions on direct examination, he testified as follows:

"Q. Mr. Knopp, I want to ask you whether or not since the 13th of November, 1947, when Mr. Manning is said to have been injured, in your opinion, he has acted normal? A. No, sir, he didn't seem like a normal man to me at all."

Thomas Russell Howard, after stating that he knew the plaintiff and had observed

him before and after the accident, testified:

"Q. I want to ask you whether or not in your opinion, please, sir, before he got hurt on November 13, 1947, he acted as a normal person? A. Yes, sir, he was normal. * * *

"Q. I am asking you another question. Since he got hurt on November 13, 1947, I want to ask you whether or not he acts like a normal person? A. He does not act normal. * * *"

In Disheroon et al. v. Brock, 213 Ala. 637, 105 So. 899, 900, the court speaking through Justice Somerville, observed:

"It is not easy to reconcile all of our decisions as to the admissibility of a witness' testimony as to the mental or emotional state of another person whom he has observed. We think, however, that the trial court did not err in permitting Mrs. Hayes to state, as a collective fact, that plaintiff was 'awfully nervous' shortly after the alleged search of her home and for a week afterwards. South & N. A. R. Co. v. McLendon, 63 Ala. 266; Prince v. State, 100 Ala. 144, 147, 14 So. 409, 46 Am.St.Rep. 28; Long v. Seigel, 177 Ala. 338, 58 So. 380. Such statements, subject as they are to cross-examination, can do little harm in any case, and the trend of modern decisions is opposed to making their admission a ground for the reversal of judgments *unless they are clearly improper and manifestly prejudicial.*" [Italics supplied.]

In a later case, Capital Motor Lines v. Gillette, 235 Ala. 157, 162, 177 So. 881, 885, Justice Bouldin who concurred in the opinion of Justice Somerville in the Disheroon case, observed:

"In Armour & Co. v. Cartledge, supra [234 Ala. 644, 176 So. 334, 339], a physician who had testified to certain mental and physical infirmities was held incompetent to testify that such person was incapable of safely driving an automobile. This on the ground that the physician showed no expert knowledge of qualifications to drive a car. His expert evidence was admitted within the sphere of expert knowledge, but the jury left to take his evidence and apply their own common knowledge and judgment in solving the question of the capability of the man to drive a car.

"So, here, the witness could state the visible symptoms, including appearances, discernible by association, but it must be left to the jury to reach their conclusion in the light of all the evidence as to whether plaintiff was able to pursue her teaching profession.

"We are impressed the error in admitting this evidence on a most vital issue worked probable injury to defendant, which must lead to a reversal.

"We may add that general statements of other nonexpert witnesses, to the effect that plaintiff was not 'normal' after her injury, were too indefinite, inviting the jury to speculate on the extent of her trouble. The witnesses should state the facts, showing wherein she was different. These would include appearances, reactions of any kind, which would shed light on the issue before the jury."

We believe the true rule to have been clearly stated by Mr. Justice Sayre in Brandon v. Progress Distilling Co., 167 Ala. 365, 368, 52 So. 640, 641, as follows:

"* * * There have been cases decided here in which it was held that a witness may state his judgment as to the existence vel non of facts where the facts stated were collective facts and the judgment of them was based upon knowledge of all the constituent elements. Sometimes it is impracticable to lay before the jury all the details upon which the collective fact is based. East Tenn. V. & G. R. R. Co. v. Watson, 90 Ala. 41, 7 So. 813; McVay v. State, 100 Ala. 110, 14 So. 862. It has been said that the soundness of the conclusion in such a case is to be tested on cross-examination. But it has never been held that a witness may usurp the function of the jury—or the court, when it passes on the facts—by stating his conclusion as to the very fact in issue between the parties. The rulings have been to the contrary. Louisville & N. R. R. Co. v. Landers, 135 Ala. 504, 33 So. 482; Moore v. Monroe Refrigerator Co., 128 Ala. 621,

29 So. 447. The error here involved was not relieved of injurious consequence by the fact that elsewhere in his testimony the witness detailed some facts which may have tended to show that defendant was a partner in the firm of Donegan & Lacy, but which, standing alone, were wholly inadequate to sustain that conclusion."

This case has been repeatedly followed. Sovereign Camp, W.O.W. v. Hutchinson, 217 Ala. 71, 114 So. 684; Colvin v. State, 247 Ala. 55, 22 So.2d 548; Watkins v. Reinhart, 243 Ala. 243, 9 So.2d 113; Crotwell v. Cowan, 236 Ala. 578, 579, 184 So. 195; State v. West Point Mfg. Co., 236 Ala. 467, 183 So. 449, and cases therein cited.

Under the pleadings and evidence in this case, it was a question for the jury to ultimately determine the consequence of plaintiff's hurt, whether he was normal after his injury or abnormal.

The objections by the defendant to the questions above enumerated were not well taken and were properly overruled, though some of the answers were not responsive to the question and were subject to motion to exclude, and in one instance, when such motion was made, part of the answer was excluded. We here refer to the answer of the witness Bandy, "he acts like a crazy man to me." The last answer of Mrs. Manning, "No, he was not normal" was subject to the motion to exclude. The same observation is made in respect to the answer of the witness Thomas Russell Howard, "Yes, sir, he was normal."

The defendant, before the jury retired, excepted to the following excerpt from the oral charge of the court: "If the plaintiff is entitled to recover, he is entitled to recover such sum as, in the sound discretion of the jury, will afford him reasonable compensation for any and all damages sustained, that is, *any loss of earnings in the past, present or future,* any permanent injury, any expenses incurred in treating any injuries which may have been proven to your reasonable satisfaction, and then compensation for physical pain and suffering, both past and present and future." [Italics supplied.]

The defendant insists that the statement italicized is unsound in that it authorizes the jury to include in the award future earnings without factual basis for such earnings, instead of "disabling effect of the plaintiff's injuries" and that the injurious consequences of such charge was reflected in the verdict of the jury.

While the statement is not clothed in the correct and exact language of the law, which we find to be fully stated in South & North Alabama Railroad Co. v. McLendon, 63 Ala. 266, 272, as follows: "When the injury is to the person, and the wrong which causes it is not continuous in its nature, then there can be but one action for its redress, no matter how permanent or lasting the disability, pain or suffering may be. Hence, in such action, the party injured may recover in one and the same suit compensation for the disabling effects of the injury, whether past or prospective. In estimating the damages, the jury may consider the expenses of the cure; and if the injury is permanent or irremediable, or will require future treatment or nursing, the proper costs of this may be added. And the loss of time up to the verdict, and probable loss, or incapacity to do as profitable labor, in the future, and physical and mental suffering proximately caused by the injury, are, when established to the satisfaction of the jury, pertinent and legitimate factors in making up the sum of the damages which the jury may award to the plaintiff.", we hold that the excerpt was at most misleading and, therefore, if the defendant anticipated injury therefrom, it should have requested explanatory charges as to the effect of future disability. Williams v. Roche Undertaking Co.,[1] 49 So. 2d 902; Harrison v. Mobile Lt. & R. Co., 233 Ala. 393, 171 So. 742; Birmingham R. L. & P. Co. v. Friedman, 187 Ala. 562, 65 So. 939; Alabama G. S. R. Co. v. Smith, 178 Ala. 613, 59 So. 464.

1. Post, p. 56.

After full consideration and treatment of the questions argued, we find no error in the record.

Affirmed.

LIVINGSTON, SIMPSON and STAKELY, JJ., concur.