The appellant was indicted for first degree murder of Judy Deline Salter, by shooting her with a rifle or carbine. Trial was held August 25-27, 1975, and the trial jury found the appellant guilty of murder in the second degree and fixed punishment at thirty-five years and one day.
The appellant and the victim had at one time dated each other but that relationship had come to an end some few months prior to the killing. The appellant was a married man and returned to his wife and victim was dating one Standard Woods at the time of this occurrence.
Greg Franklin testified that he had picked up Judy Salter (victim), and Linda *Page 1374 
Gail Clopton, his girl friend, at their respective homes and proceeded to the American Legion Club in Goodwater, Alabama. Upon leaving the club, some three hours later they saw appellant standing at the door talking to some men. In passing, victim accidentally bumped into appellant. The appellant then grabbed victim by her neck and started beating her with his fist. Greg Franklin attempted to stop appellant from beating victim and the appellant knocked him to the ground and continued to beat the victim. Franklin again attempted to stop him and the appellant pulled a knife and keys out of his pocket. Franklin went to his automobile, got a pistol and came back and shot appellant in the leg. Appellant chased Franklin and the girls in his auto. Appellant then went to the hospital and Franklin, his girl friend and the victim went to someone's home and called the police.
When the police arrived they arrested Franklin and took him and the two women to the Goodwater Police Department. Victim, while at Goodwater jail called Standard Woods, her boy friend, to come get her. Standard picked up the two girls and took a route directly to victim's home. While enroute to victim's home they passed appellant's car parked on the side of the road; appellant was talking to some people in another car. Appellant followed Standard Woods' car at a fast rate of speed and shot at the car. Woods turned around and headed for the police station. Appellant's car followed Standard Woods' car to the Sylacauga police station. Standard Woods' car stopped at the police station and appellant's car stopped right behind it. There were policemen standing in front of the police station and Standard Woods told them that a man was shooting at his car and following him. Appellant got out of his car and came to the passenger side of Standard Wood's car and said, "Give me Judy out of there." The appellant then started shooting. Victim slumped over in the car and she did not speak after that.
Standard Woods testified that someone was driving appellant's car with the appellant in the car on the passenger side with a rifle. They drove up beside him. Appellant's car passed and a shot was fired from appellant's car. After the appellant's car passed Standard Wood's car, Woods turned around and drove to the Sylacauga police station and appellant followed him and stopped right behind him. Woods later found two bullet holes in his car, one in the front roof and one in the windshield. Woods further testified that appellant came to the passenger side of the car and, "the police told him to stop but he fired through the window and killed Judy and the cops fired at him."
Mr. Neal Denny, a Sylacauga police officer, testified that he and Officer Jack Matson went to the hospital between 1:00 A.M. and 2:00 A.M. before the killing, due to a routine call by the hospital that someone was there who had been shot. The appellant asked the officers what they were doing up there and said; "You can go right back to town. I'll handle this myself." He said he did not have time to lay there and let them take the bullet out, that he had to get something done about this situation. Denny testified; "Appellant appeared to be coherent and to realize his acts."
Later, Officer Denny got a call about 4:45 A.M. from an officer needing help at the City Hall. When he got there, a lot of people were lying on the ground. Mr. Beard (appellant), Mr. Thompson, Mr. Woods, Miss Embry and Miss Clopton were lying on the ground. He saw the victim in the car and his best judgment was that she was dead.
Officer Ivey testified he went to the hospital and saw the appellant prior to the killing and he appeared to be mad and said; "`Who called you all? I don't need you. I'll take care of this myself.'" Ivey saw him later about 20 or 25 minutes to 5 o'clock and stated that; "We were gassing our car at the police station. A car pulled up and three people in the car hollering, `They was shooting at us.'" A car pulled up behind them and appellant got out with a rifle. Ivey yelled for him to stop and the *Page 1375 
appellant said; "Stay out of it man, you know what I came after." Ivey testified that the appellant moved to the front of the car and there were two shots by appellant and "we opened fire on him." Appellant was on the passenger side, "when he fired the shots, I was looking at him."
James Butram of the State Department of Toxicology, examined the victim. External examination revealed a number of wounds. One of the wounds was a 7/8 inch penetrating wound on the left back of the body which was later traced by dissection through the body to the right breast where the tract ended. He found a number of smaller wounds; some contained glass and some contained soft, gray metal.
At the end of the tract of the major wound, and in the right breast, he recovered a brass colored fragment of material which resembled an inverted bullet jacket which he turned over to Garry Wallace, a criminalist who works in the same lab with John Case; both of whom are with the Department of Toxicology. The main penetrating wound was in the left back and extended to the right breast. The damage tract showed that the projectile nearly severed the arch of the aorta which caused a massive hemorrhage in the chest cavity. It was his opinion that death was due to hemorrhage and shock as a result of the gunshot wound to the upper left back.
John Case, State Department of Toxicology, test fired State's exhibit number 1, which is a 30-30 caliber carbine and stated that he determined that this carbine fired the missile which was recovered from the victim's body.
Sam Talton, police officer, testified that he and Officer Ivey saw appellant in the hospital prior to the killing and he had been shot in the leg and that he appeared rational and told them to the effect that he did not want them and he would handle it himself. That he and Ivey were at the police station later in the morning, and observed the shooting of the victim by the defendant.
Lester Proctor, a Sylacauga police officer, testified that he saw appellant at the hospital about 2:30 A.M. Appellant told him that he would not get a warrant but would handle the matter himself. Later in the morning he went to the police station and was gassing up his car and saw appellant run up to the car where victim was seated; that he had a rifle. He said he heard two shots and then saw appellant crouch behind the car in which the victim was riding.
Jimmy Curtis, the Coroner of Talladega County, testified he viewed the victim's body at 4:50 A.M., while the body was still in an automobile and victim was dead at the time.
Mrs. Nettie Salter, mother of the victim, testified that victim and appellant dated each other for about three years and broke up. That appellant and victim broke up the year before the shooting. State rested its case.
Appellant testified that he had seen victim on and off for two years. He said that he knew Greg Franklin and Standard Woods. On February 23, 1975, he was with Ray Anthony Thompson and Brenda Embry. He had the carbine with him. He was at the American Legion about 12:00 P.M. He was talking to two guys at the door and said: "I saw Judy (victim), Linda and Greg." He said that one of them bumped him and he told Judy to come there, he wanted to talk to her. He stated that: We went outside to talk and Greg hollered to Judy to come on. Greg came up, grabbed Judy by her arm and said, `come on'. He started pulling her and he then shot me."
The appellant went to the Sylacauga hospital about 1:00 A.M. He stayed there about three hours but the bullet was not removed. He remembered seeing Officer Hay and Hay asking; "What you gonna do about it?" The appellant said; "I'll take care of it."
Appellant left the hospital at 4:30 A.M. with Ray Thompson and Brenda Embry. Ray Thompson drove and he had Ray stop the car on the road and talked to Richard and Barbara Reggens. He said this white El Dorado came by and someone in the car *Page 1376 
shot at him. He got in his car, got his rifle. He said; "We were about six or seven blocks from the police station," and he told Ray to catch the car. The car parked in front of the fire station and he saw two policmen. He said they parked behind the other automobile and he got out of the car with his rifle; went up to the other car and asked Judy (the victim) to get out. He stated that he came down with the rifle, pulled the trigger and fired one shot, and, "the officers fired and I was hit."
During State's case, defense counsel asked the court to order the State to deliver to him signed written statements made by State's witnesses prior to trial date. The witnesses did not use their statements while on the witness stand or did State's attorney use them in his examination. The court, after an in camera inspection, denied defense counsel's request.
 I
Appellant contends it was error to permit, over objection, officers to relate their conversations with appellant prior to the killing. Appellant's counsel objected and gave reason for objection to be improper predicate. No predicate was necessary.
The general rule is that all the acts, words, signs and declarations of defendant indicating hostility to deceased immediately preceding the encounter; Blair v. State, 211 Ala. 53,99 So. 314, if relevant, are admissible in evidence as part of the res gestae, 22 C.J.S. Criminal Law § 668, p. 1057 (1940), as where they throw light upon the actions animus or intent of the defendant, or his mental attitude at the time of the difficulty: McCoy v. State, 232 Ala. 104, 166 So. 769;Stallings v. State, 249 Ala. 580, 32 So.2d 236, cited in Levertv. State, 252 Ala. 308, 42 So.2d 532.
. . . . .
 "[I]n homicide cases, declarations of the accused or the deceased, made just before starting to the scene of the killing, as to the purpose or object in going there, are admissible as part of the res gestae . . of the killing." Ingram v. State, 13 Ala. App. 147, 69 So. 976, cert. den. sub nom. Ex parte Ingram, 195 Ala. 695, 70 So. 1013.
Therefore, it is proper to admit declarations made by the accused while the fatal difficulty was in progress; Brown v.State, 21 Ala. App. 214, 107 So. 29, his conduct at or near the scene and until the entire difficulty has been abandoned by both parties is admissible. Hall v. State, 49 Ala. App. 695,275 So.2d 374.
Facts which: "Show preparation to commit the crime are always admissible in evidence." Ellis v. State, 244 Ala. 79,11 So.2d 861; Wilson v. State, 31 Ala. App. 560, 19 So.2d 777.
 II
Appellant objected to testimony of police officer's characterization of appellant.
The police officers testified that appellant, prior to the killing, "appeared rational, spoke clearly and distinctly and appeared mad."
A non-expert witness may state his opinion on the appearance of the defendant. "`Witnesses may always be allowed to testify as to the appearance and emotions of other persons;'" Hamiltonv. State, 281 Ala. 448, 203 So.2d 684.
In Parrish v. State, 139 Ala. 16, 36 So. 1012:
 "The objections to the statements of the witness that the defendant `seemed all right,' that `he talked rational,' etc., were properly overruled. Such expressions were admissible under the rules [the Supreme Court] . . . [has] announced, and for the further reason that they were admissible to show the appearance, emotions and condition of the mind of the defendant." [Bracketed material added.]
In Miller v. State, 107 Ala. 40, 19 So. 37, the Alabama Supreme Court specifically ruled that: "it was competent for a witness *Page 1377 
to testify that accused appeared to be mad."
Testimony was allowed that one "appeared normal"; L NRailroad Co. v. Manning, 255 Ala. 43, 50 So.2d 153; and that one "seemed all right, talked rationally." Deloney v. State,225 Ala. 65, 142 So. 432.
 III
Counsel for appellant contends that the court erred in the principle that the admission of cumulative evidence is within the sound discretion of the trial judge; Allen v. State,290 Ala. 339, 276 So.2d 583 (1973).
Cumulative evidence is permissible even "Though such evidence be only cumulative and may tend to inflame the jury, its admissibility will not be affected if it sheds light upon a material inquiry or illustrates the transaction at issue."Reedy v. State, 246 Ala. 363, 20 So.2d 528; Allen v. State,290 Ala. 339, 276 So.2d 583. Jackson v. State, 260 Ala. 641,71 So.2d 825.
The trial judge did not abuse his discretion by permitting the introduction of photographs, States' exhibits 5 and 9.
 IV
The appellant contends that the court erred in refusing to require the district attorney to produce signed statements made by the State's witnesses prior to trial date.
The court made an in camera inspection of prior written statements of witnesses denied the appellant's motion to produce and further found that the State did not use such statements in the examination of the said witnesses or use the statements to refresh the recollection of any of said witnesses.
In Cooks v. State, 50 Ala. App. 49, 276 So.2d 634, cert. den.290 Ala. 363, 276 So.2d 640, it was held:
 "The first requisite necessary to secure for inspection production of a `statement' of a witness for use on cross-examination of the witness is that the statement must be one in writing prepared by him or prepared by another at his instance and signed by him or otherwise authenticated by him. In the instant case there was nothing to indicate by query of the witness by the defense or otherwise that the witness had given to any officer a written statement signed or authenticated by her. There was not laid in the evidence any showing that any statement made by the witness to officers before trial differed in any respect, from statements made to the jury during trial. See Bellew v. State of Mississippi, 238 Miss. 734, 106 So.2d 146, cited with approval in the Mabry
case, supra. Neither was there any such showing of inconsistency in testimony given by the witness at a preliminary hearing previously held and the testimony given by her on the trial before the jury. There is no showing that the statement requested, if any was of such nature that without it the defendant's trial would be fundamentally unfair. The production for inspection of any such statement as above defined lies within the sound discretion of the Court and we find no abuse of that discretion in the ruling here made. See Annotation Right of Defendant in Criminal Case to Inspection of Statement of Prosecution's Witness for Purpose of Cross Examination or Impeachment, 7 A.L.R.3d, pp. 181, 217, 219, 213, citing the Mabry case, supra, and the authorities therein noted."
A statement, memoranda, or notes, not read by the witness interviewed and not signed or authenticated by the witness cannot be considered evidence. Mabry v. State, 40 Ala. App. 129,110 So.2d 250. In this case, Harwood, P.J., writing for the court quoted with approval:
 "Perhaps the answer is best summarized in a statement by Cardozo, C.J., in People ex rel. Lemon v. Supreme Court of State of New York, 245 N.Y. 24, 156 N.E. 84, 85, 52 A.L.R. 200, wherein he observed: *Page 1378 
 "`Documents are not the subject to inspection for the mere reason that they will be useful in supplying a clew whereby evidence can be gathered. Documents to be subject to inspection must be evidence themselves.'"
 Conclusion
We have considered the entire record under Code 1940, T. 15, § 389, from this examination we conclude that error is not made to appear.
The foregoing opinion was prepared by Honorable Harry E. Pickens, Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of § 38, T. 13, Code 1940, as amended; the Court has adopted his opinion as its own.
The judgment below is hereby
AFFIRMED.
TYSON, HARRIS, DeCARLO and BOOKOUT, JJ., concur.