The appellant, Ronald Patterson, was found guilty of murder, in violation of § 13A-6-2, Code of Alabama (1975), and was sentenced to 25 years in the State penitentiary and ordered to pay $7,090 restitution to the victim's parents.
Brenda Ann Acosta testified that on April 7, 1986 she was involved in an accident in Montgomery while traveling from Florida to Atlanta. She observed a vehicle crossing the median which became airborne before hitting the pavement on the other side of the highway. Acosta testified that when she realized the vehicle was going to hit her car, she applied the brakes. The front right section of her automobile hit the rear of the other car and caused it to turn. Acosta described the other automobile as "a large Oldsmobile Pontiac [sic]." She further testified that the other vehicle was traveling at approximately 55 to 70 miles *Page 811 
per hour. She testified that after her car had stopped, she got out of the vehicle and observed that the driver of the car which had crossed the median was conscious and that people were attending him. She observed the driver of a third car "draped forward in the car." That driver was being attended by a nurse, who informed Acosta that the driver was dead. Therefore, she approached the other car in order to render assistance.
She further testified that after a man finally succeeded in opening the door of the vehicle, Acosta climbed in and stabilized the appellant's neck. Acosta identified the appellant as the man who was driving the car which crossed the intersection. Acosta testified that there were a number of items on the floorboard of the appellant's automobile, including a bottle.
William E. Knight testified that on April 7, 1986, he observed a car "coming straight across the median and it plowed into two other cars right in front of [him]." Knight testified that he estimated the appellant's vehicle to be traveling at approximately 50 to 60 miles per hour. He observed the car cross the median, and he stated that the vehicle did not appear to be braking. He further testified that he observed the appellant's vehicle become airborne just prior to striking the first vehicle. He then observed the first vehicle apply its brakes, whereupon the appellant's vehicle hit the smaller car. Knight testified that he stopped his vehicle and approached the cars to determine whether he could help anyone. He approached the appellant's vehicle (in court he identified the appellant as the driver of the vehicle) and was unable to open the door of his vehicle. He then noted that Acosta was uninjured and out of her car. He approached the smaller vehicle, but the doors to that car were also jammed. He walked back to the appellant's vehicle and attempted to speak to the appellant through the window on the driver's side. He testified that the appellant's speech was slurred and that he did not appear to be in control of his mental faculties. Appellant repeatedly asked for a cigarette and reached for a bag lying on the passenger's side of the floorboard.
Marilyn Dean, a nurse with the State Board of Mental Health, testified that on April 7, 1986, she observed the appellant's vehicle cross the median, hit a car, bounce off of that car and hit another vehicle on its driver's side. She further testified that there was no car near the appellant's vehicle, that could have forced it into the median. Dean testified that she first approached the appellant's vehicle and asked if he was all right. He responded that his back was hurting. She then approached the victim's automobile and saw that she was bleeding profusely. She testified that she could not find a pulse initially, but subsequently found "a very faint" one. The victim's breathing was "ragged like she couldn't get her breath at all." Dean testified that the victim was bleeding from her nose, mouth, and head, and that she could not stop the bleeding.
Arnetta Reese, of the Montgomery Police Department, testified that she was called to the scene of the collision on April 7, 1986. She testified that the appellant informed her, while still at the scene, that a car had changed lanes suddenly and hit him, causing him to lose control of his vehicle. He further stated that the other vehicle continued on. Reese testified that she retrieved a bottle of Thunderbird wine in a paper bag from the floorboard of the appellant's vehicle.
Beth Green, an emergency medical technician, testified that she transported appellant to the hospital on April 7, 1986. She testified that the appellant smelled of alcohol. Laura Shelvin, a toxicologist with the Alabama Department of Forensic Sciences, testified that the appellant's blood alcohol level was 0.3 percent.
Investigator M.J. Bush, an accident investigator with the Montgomery Police Department, testified that he was called to the scene of the accident in order to process the scene, gather evidence, and assist in obtaining blood samples and taking statements concerning the accident. Bush testified that as he approached appellant's vehicle, he detected the odor of alcoholic beverages. Thereafter, he followed the ambulance *Page 812 
that took the appellant to the hospital, in order to obtain a blood sample from the appellant. Bush read the appellant hisMiranda rights at the hospital, and the appellant replied that he understood his rights and would talk to Investigator Bush. The appellant told Bush that a car had hit him from the rear, causing him to lose control of his vehicle and cross the median. The appellant then agreed to sign an alcohol consent form in order to get a sample of his blood. After he signed the form, a nurse and Investigator Bush approached the appellant in order to draw the blood. The appellant took the form, "wadded it up," and stated that he would not give blood. Bush telephoned police headquarters in order to get a court order for the blood sample. Bush further testified that the appellant was in his custody and was not allowed to leave the hospital until the court order arrived. After Investigator Bush was presented with the court order, he again read the appellant hisMiranda rights. A sample of blood was then taken from appellant. Several days later, the appellant gave the police a statement in the presence of his attorney, after again having been advised of his Miranda rights.
The appellant testified that on the evening prior to the wreck, which had occurred at approximately 1:50 p.m., the appellant began drinking Thunderbird wine. He continued drinking on Monday morning and slept very little. He left for work shortly after 1:00 p.m. He stated that on the way to work, he "heard a loud bang and felt it." His car was knocked sideways and although he recalled fighting for control of his vehicle, he could not remember traveling over the median. The appellant testified on cross-examination that from 6:00 p.m. on the evening prior to the accident until 6:00 a.m. on the morning of the accident, he consumed approximately three bottles of wine.
 I
The appellant argues that the trial court erred in admitting the testimony of Brenda Acosta as to her observations concerning the appellant's appearance at the scene of the crime. The following transpired at trial:
 "[PROSECUTOR]: What, if anything, did you notice that was unusual about Mr. Patterson's mannerisms or his speech?
"[DEFENSE COUNSEL]: Objection.
"THE COURT: Overruled.
 "[ACOSTA]: There was a great deal of anxiety and restlessness. It appeared that the concentration —
"[DEFENSE COUNSEL]: Objection to what appeared.
"THE COURT: Overruled.
 "A. It appeared that the concentration span was not very long. There were times that appeared to be, I don't know whether really to say an incoherence or an irrationality.
 "[DEFENSE COUNSEL]: Objection to that and move to strike.
"THE COURT: Overruled."
Acosta had previously testified that on several occasions she had observed persons when they had "more to drink than they should have had." She further testified that she spent some time in the appellant's vehicle with him, talking to him and observing him.
" 'Witnesses may always be allowed to testify as to the appearance and emotions of other persons.' Hamilton v. State,281 Ala. 448, 203 So.2d 684 (1967); Garraway v. State, Ala.Cr.App., 337 So.2d 1349 (1976); Beard v. State, Ala.Cr.App., 337 So.2d 1372 (1976)." Renfroe v. State,382 So.2d 627, 631 (Ala.Cr.App.), cert. denied, Ex parte Renfroe,382 So.2d 632 (Ala. 1980) (wherein non-expert witness testified that the appellant " 'acted pretty occupied' " and "noted that the appellant's behavior was not customary").
Police officers were allowed to testify in Beard v. State,337 So.2d 1372 (Ala.Cr.App. 1976), that the appellant "appeared rational, spoke clearly and distinctly and appeared mad." This court in holding that a non-expert witness may state his opinion on the appearance of the appellant, stated:
"In Parrish v. State, 139 Ala. 16, 36 So. 1012: *Page 813 
 " 'The objections to the statements of the witness that the defendant "seemed all right," that "he talked rational," etc., were properly overruled. Such expressions were admissible under the rules [the Supreme Court] . . . [has] announced, and for the further reason that they were admissible to show the appearance, emotions and condition of the mind of the defendant.' [Bracketed material added.]
 "In Miller v. State, 107 Ala. 40, 19 So. 37, the Alabama Supreme Court specifically ruled that: 'It was competent for a witness to testify that accused appeared to be mad.'
 "Testimony was allowed that one 'appeared normal'; L N Railroad Co. v. Manning, 255 Ala. 43, 50 So.2d 153; and that one 'seemed all right, talked rationally.' Deloney v. State, 225 Ala. 65, 142 So. 432."
Beard v. State, supra at 1376-77. See also Tuck v. State,384 So.2d 1240 (Ala.Cr.App. 1980) (a witness may testify whether another person appeared to be mad or angry).
Furthermore, it is clear that a non-expert witness may testify as to the apparent intoxication of another.
 "Intoxication is a matter of common observation which requires no peculiar scientific knowledge. 31 Am.Jur.2d Expert Opinion Evidence, Section 101 (1967). The general principles controlling opinion testimony on intoxication are stated in 23 C.J.S. Criminal Law § 866 (1961).
 " 'It has been broadly declared, or the principle has been broadly applied, that any witness may express his opinion as to intoxication, that opinion testimony as to intoxication is not limited to expert testimony, and may be given by law [sic] witnesses, and that intoxication or sobriety need not be proved by expert testimony, since it does not require any particular or special knowledge. The witness must have had a suitable opportunity, even though slight, for observation; the conditions under which the witness observed the person in question, and the opportunity to observe him, go to the weight, and not to the admissibility, of the testimony. It has been required that evidence be admitted showing that any witness who is asked to express an opinion as to accused's intoxication is properly qualified.'
 "See also Gladden v. State, 36 Ala. App. 197, 54 So.2d 607, cert. denied, 256 Ala. 368, 54 So.2d 610
(1951)."
Jolly v. State, 395 So.2d 1135, 1143 (Ala.Cr.App. 1981).
Moreover, whether a sufficient predicate has been established to allow a witness to so testify is a matter resting largely in the trial court's discretion. The trial court's ruling will generally not be disturbed on appeal absent a clear showing of abuse. Jolly v. State, supra; Kozlowski v. State, 248 Ala. 304,27 So.2d 818 (1946). "In determining competency, the trial judge is not bound by any hard and fast rule. Redwine v. State,36 Ala. App. 560, 61 So.2d 715, cert. denied, 258 Ala. 196,61 So.2d 724 (1952)." Jolly v. State, supra, at 1143. See alsoGarraway v. State, 337 So.2d 1349, 1353 (Ala.Cr.App. 1976) (deputy sheriff allowed to testify that defendant acted in a drunken manner).
The trial court did not abuse its discretion by allowing Acosta to testify to the appellant's appearance.
 II
The appellant contends that the trial court erred in denying his motion in limine concerning a prior D.U.I. arrest and allowing testimony concerning the prior D.U.I.
 "In order to prove that a homicide committed by an intoxicated driver of an automobile constitutes murder in the second degree, the evidence must show that the accused either intentionally caused the collision or that he was conscious of his acts, conscious of impending danger surrounding him, and of the probable results, and then with the reckless indifference to the probable consequences of his acts, brought about the collision and death of the deceased. Commander v. State, 374 So.2d 910 (Ala.Cr.App.), cert. quashed, 374 So.2d 921 (Ala. 1978). In this case we think that the prior incidences *Page 814 
of driving while intoxicated by the defendant were admissible and were highly [relevant] to prove the reckless indifference of the defendant to the probable consequences of his acts.
 " 'If the accused is charged with a crime that requires a prerequisite intent, then prior criminal acts are admissible to show that he had the necessary intent when he committed the now-charged crime. This rule is based upon the theory that, because the unintentional doing of an act is abnormal and unusual, the more a person does other acts similar to the act in question the greater the likelihood that the act in question was not done inadvertently.'
 "C. Gamble, McElroy's Alabama Evidence, Section 69.01(5) (3rd ed. 1977).
 "Two other rules from McElroy are also of help to us in reaching our conclusion:
 " 'If the accused's commission of a prior crime is relevant, otherwise than as tending to prove his bad character, and falls within one of the exceptions to the general exclusionary rule, evidence of his acquittal or conviction thereof does not affect its admissibility.'
"McElroy, Section 69.02(2).
"* * * * * *
 " 'If the accused's commission of another crime is admissible in a present prosecution, the State may prove in meticulous detail the manner in which the accused committed such other crime.'
"McElroy, Section 69.02(8)."
Palmer v. State, 401 So.2d 266, 269 (Ala.Cr.App. 1981), writ denied, Ex parte Palmer, 401 So.2d 270 (Ala. 1981), cert. denied, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982).
Thus, evidence of recent incidences of driving while intoxicated may be admissible to show the intent of the accused or to show his reckless indifference to the probable consequences of his acts. Brown v. State, 492 So.2d 661, 664
(Ala.Cr.App. 1986); Reeves v. State, 470 So.2d 1374, 1376
(Ala.Cr.App. 1985). However, the prior incidences must be relevant and must not be too remote. Palmer v. State, supra at 269-70. In the case sub judice, Officer Segrest testified concerning a prior D.U.I. that occurred on August 1, 1985. Because the prior D.U.I. occurred within a year of the present offense, the prior crime was not too remote to bar its admissibility. See Reeves v. State, supra (prior incident occurred less than one year prior to the charged offense);Palmer v. State, supra (five-year-old arrest for driving while intoxicated and reckless driving and two-year-old arrest for driving while intoxicated). Furthermore, the prior offense was relevant to prove intent and to show recklessness of conduct.
 III
The appellant argues that the blood sample was illegally taken in that the order signed by Judge William R. Gordon failed to designate his legal capacity or official title. The appellant cites Reach v. Quinn, 159 Ala. 340, 48 So. 540
(1909), to support his argument; however Reach was overruled by the Alabama Supreme Court in Cherry v. State, 491 So.2d 1003
(Ala. 1986). Cherry noted that, "As the general rule recognizes, when a public officer signs a document which he or she is required to sign in an official capacity, the signature can be judicially noticed, even without a designation of title." Id., at 1005. Thus, the appellant's argument is without merit.
 IV
The appellant contends that the toxicologist should not have been allowed to testify concerning the effects of alcohol on a person. The record indicates that Laura Shevlin, a toxicologist employed by the Alabama Department of Forensic Sciences, testified that "[a] toxicologist is someone who analyzes biological material for the possible presence of alcohol, drugs or poison." She testified that she had received a Bachelor of Science degree in chemistry from Duke University and a Master's degree in physical chemistry from the University of California at Berkeley, and had taken additional graduate courses at Auburn University in the areas relating to toxicology, *Page 815 
such as biochemistry, pharmacology, and toxicology. She further testified that she had tested in excess of 10,000 blood samples to determine blood alcohol content. She had been certified to testify as an expert in court in the areas of toxicology and serology reports. She had also been certified by the State Board of Health to perform blood alcohol analyses. Thereafter, the prosecutor asked Shevlin, based on her training and experience, what the effects of .3 percent alcohol blood content would be on a person. The defense counsel objected on the grounds that the witness had not been qualified as a medical doctor, and the trial court overruled the objection.
 "The question of whether or not a particular witness will be allowed to testify is largely discretionary with the trial court, whose decision will not be disturbed on appeal except for palpable abuse. Kozlowski v. State, 248 Ala. 304, 27 So.2d 818 (1946); Davis v. State, 352 So.2d 3
(Ala.Cr.App.), cert. denied, 352 So.2d 8 (Ala. 1977). An individual may qualify as an expert witness by study, practice, experience or observation. Radney v. State, 342 So.2d 942
(Ala.Cr.App.), cert. denied, 342 So.2d 947 (Ala. 1977). An expert witness is one who can enlighten a jury more than the average man in the street. Carlton v. State, 342 So.2d 1382 (Ala.Cr.App. 1977). Also see C. Gamble, McElroy's Alabama Evidence, § 127.01(5) (3rd ed. 1977)."
Gullatt v. State, 409 So.2d 466, 472 (Ala.Cr.App. 1981). See also Meade v. State, 390 So.2d 685 (Ala.Cr.App.), cert. denied,390 So.2d 693 (Ala. 1980) (wherein a witness employed with the Alabama Department of Forensic Sciences was allowed to testify to the effects of cocaine on the human body).
The trial court did not abuse its discretion in allowing the forensic toxicologist to testify to the effects of alcohol on a person.
 V
The appellant argues that the trial court erred in not granting his motion to exclude the State's evidence for failure to prove a prima facie case. According to § 13A-6-2(a)(2), Codeof Alabama (1975):
"(a) A person commits the crime of murder if:
". . . .
 "(2) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person."
Under § 13A-6-2 Commentary, it is noted that "Section13A-6-2(a)(2) also retains as murder the recklessly engaging in conduct which creates a grave risk of death under circumstances 'manifesting extreme indifference to human life,' which is different from a positive intent to kill, and which essentially restates existing law." Thereafter the Commentary refers toReed v. State, 25 Ala. App. 18, 142 So. 441 (1932), in which it was held that driving a car while intoxicated in a highly reckless manner on the highway was greatly dangerous to the lives of others and that doing so with knowledge of the presence of others constituted reckless behavior and extreme indifference to human life.
 " 'An accidental death may constitute murder if "[u]nder circumstances manifesting extreme indifference to human life, [the defendant] recklessly engages in conduct which creates a grave risk of death" to the victim and thereby causes the victim's death.' Ex parte Weems, 463 So.2d 170, 172 (Ala. 1984). Such murders include 'those homicides caused by such acts as driving an automobile in a grossly wanton manner.' Northington v. State, 413 So.2d 1169, 1172 (Ala.Cr.App. 1981), cert. quashed, Ex parte Northington, 413 So.2d 1172
(Ala. 1982); Commander v. State, 374 So.2d 910, 913-15 (Ala.Cr.App. 1978), cert. quashed, 374 So.2d 921 (Ala. 1979)."
Holman v. State, 495 So.2d 115, 117 (Ala.Cr.App. 1986).
 "A conviction for murder resulting from a homicide caused by the driving of an automobile is authorized where there is sufficient evidence to warrant a finding by the jury either that the accused intentionally caused the collision or that he was conscious of his acts, conscious of *Page 816 
the impending danger surrounding him, and conscious of the probable results of his acts, and then, with reckless indifference to the probable consequences of his acts, brought about the collision and death of the deceased. Jolly v. State, 395 So.2d 1135 (Ala.Crim.App. 1981)."
Smith v. State, 460 So.2d 343, 346 (Ala.Cr.App. 1984).
The record indicates that the appellant had previously undergone alcoholic treatment and had been arrested for a D.U.I. within a year prior to the present offense. He admitted that he drank three bottles of Thunderbird wine from 6:00 p.m. until 6:00 a.m. on the morning of the offense. The appellant's blood alcohol level registered .3 percent and witnesses testified to the appellant's apparent state of intoxication. There is no question that the appellant hit the victim's vehicle after crossing the median and thereby caused her death. The State sufficiently established a prima facie case of murder.
 VI
The appellant argues that the trial court improperly denied his trial motion to receive credit for insurance proceeds paid to the victim's parents as a result of a civil settlement on this case citing § 15-18-75. The appellant has presented no evidence other than his allegation in brief that the insurance company paid the victim's family any settlement. Under §15-18-75. The appellant was not entitled to offset the amount of restitution by the amount of the settlement paid, and, furthermore, there was no proof of any civil settlement.
AFFIRMED.
All the Judges concur.