TAYLOR, Presiding Judge.
The appellant, Danny Wayne Turner, was convicted of three counts of vehicular homicide, in violation of § 32-5A-192, Code of Alabama 1975, and one count of leaving the scene of an accident, in violation of § 32-10-1, Code of Alabama 1975. He was sentenced to 3 terms of 5 years and 1 term of 10 years to be served consecutively in the state penitentiary.
The evidence tended to show that on October 27, 1988, the appellant, while driving a loaded tractor trailer truck, ran a red light at the intersection of U.S. Highway 78 and Bryan Road in Sumiton, Alabama. This traffic violation resulted in the appellant’s truck colliding with a small automobile, killing the three occupants inside. After the collision, the appellant stopped his truck, got out, and went to check on the occupants of the car. What he saw inside sent him into a state of shock.
Thurman Sheffield, the appellant’s uncle, found the appellant wandering down Highway 78. He eventually took the appellant, who remained in a state of shock, to North Mississippi Medical Center in Tupelo, Mississippi. Dr. Ken Lippincott, a psychiatrist at the medical center, diagnosed the appellant as suffering from psychogenic amnesia and dissociative withdrawal or shock. The appellant remained hospitalized for five days.
I
During the presentation of the appellant’s case, the State elicited the following testimony from Edith Pannell, the appellant’s ex-girlfriend, regarding the use of over-the-counter diet pills:
“Q Have you ever taken any of those?
“A Yes, I have.
“Q And drove?
“A I can’t take diet pills, much. I might would take even a fourth of one.
“Q They speed up your metabolism, don’t they?
“A That’s why I can’t take them.
*866 “Q And some people, they make nervous and jerky?
“MR. TATUM: Your Honor, Ms. Pan-nell. is not being tried here on whether she takes pills or not, and it’s really not relevant to that in this case.
“THE COURT: Overruled. Proceed.
“Q Did y’all ever do the pills together?
“A No.
“Q Did you ever do the pills and drink?
“A No.
“Q Have you ever done those kind of pills that we’ve talked about and put in liquor or—
“A No.
“Q —beer on top of them?
“A No.
“MR. TATUM: Your Honor, I would renew my objection. It’s irrelevant whether Ms. Pannell takes the pills or not. She is not on trial here.
“THE COURT: Overruled.
“Q So, you told us that these kind of pills have an adverse effect on you? That they have a bad effect on you?
“A Yes, they do.
“Q How do they effect you?
“Q What few — what little bit that I have tried to take, it wasn’t actually to keep me awake. It was to lose some weight actually.
“Q How did they affect you psychologically?
“A They make me nervous.
“Q Made you nervous.
“Q When you get nervous, do you tend to make more mistakes than you would otherwise?
“MR. TATUM: Your Honor, I object. Again, Ms. Pannell’s tendency to make mistakes or to get nervous is not relevant.
“MR. BAKER: She says she took the same kind of pills he took.
“THE COURT: Now, Mr. Tatum, she’s your witness. This is cross examination. The question is proper. These continued objections on the same grounds are only going to be overruled at the time.
“MR. TATUM: Your Honor, for the record, can I give a continuing objection?
“THE COURT: You may.
“Q These pills that you take that you say make you nervous, do they affect your judgment?
“A I don’t think they do mine, because I didn’t take that much of a pill.
“Q When you took them, did they affect your judgment?
“A No, sir.
“Q Did they affect your ability to drive a car?
“A No, sir.
“Q What kind, outside of being nervous, what else did they do to you?
“A Probably just made me sick at my stomach. I’m talking about me.
“Q Did they keep you awake, for long periods of time?
“A I wouldn’t take enough for the sleep, [sic]
“Q Would one of the effects of it be that it tended to keep you awake?
“A One may, but I don’t take one. I wouldn’t take one.
“Q The one that you took, ma’am, did they tend to keep you awake?
“A No, not on me. They just made me sick.”
There was evidence presented at trial that the appellant occasionally took diet pills while he was driving his truck. The State argued that Ms. Pannell’s testimony was relevant in that since diet pills made her nervous, one could infer that they made everybody nervous. He further argued that being nervous would impair one’s ability to safely operate a motor vehicle. Therefore, he contends, this testimony was an integral part of the State’s case in proving whether the appellant had violated a statute by running a red light.
This court must reject the State’s argument. In our opinion, it is not reasonable to infer that because diet pills make Ms. Pannell nervous, they make everybody nervous. Ms. Pannell is not an expert witness and was not qualified to testify as to the effects of diet pills on the average person. Patterson v. State, 518 So.2d 809 (Ala.Cr.App.1987).
*867 Thus, Ms. Pannell’s testimony is irrelevant because it neither proves nor disproves the main inquiry of the case. Jennings v. State, 513 So.2d 91 (Ala.Cr.App. 1987). Moreover, we are of the opinion that her testimony was unduly inflammatory in that it interjected the issue of driving under the influence of drugs into the trial even though the appellant was not charged in the indictment with that offense. Minshew v. State, 542 So.2d 307 (Ala.Cr.App. 1988). Therefore, the trial court erred by allowing the State to illicit testimony from Ms. Pannell regarding the use of over-the-counter diet pills.
II
The appellant also contends that the trial court erred when it refused to give his requested jury charges concerning the requisite intent and mental state for the offense of leaving the scene of the accident. The court refused the charges based on its holding that § 32-10-1, Code of Alabama 1975, is a strict liability crime and no intent or mental state is required. The court maintained this position even after the jury recessed its deliberations and requested answers to the following questions:
“If a person has a physical problem or is in shock, is he held responsible for leaving the scene of an accident?
“Is the jury responsible for considering why he left the scene or just the fact that he left?”
Section 13A-2-3, Code of Alabama 1975, states the following:
“The minimum requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which he is physically capable of performing. If that conduct is all that is required for commission of a particular offense, or if an offense or some material element thereof does not require a culpable mental state on the part of the actor, the offense is one of ‘strict liability.’ If a culpable mental state on the part of the actor is required with respect to any material element of an offense, the offense is one of ‘mental culpability.’ ”
Section 13A-2-4, Code of Alabama 1975, states, in pertinent part:
“(b) Although no culpable mental state is expressly designated in a statute defining an offense, an appropriate culpable mental state may nevertheless be required for the commission of that offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, states a crime of mental culpability.” (Emphasis added.)
Section 32-10-1 contains no language indicating that it is a strict liability crime. See Bettis v. State, 534 So.2d 1135 (Ala.Cr. App.1988). Thus, the issue of the appellant’s culpability should have been presented to the jury in the court’s jury charge. This is true especially in light of testimony that the appellant was found wandering down the highway in a state of shock and suffering from amnesia immediately following the collision.
For the reasons stated above, the appellant’s conviction is reversed, and this case is remanded to the Circuit Court of Walker County for a new trial.
REVERSED AND REMANDED.
All the Judges concur except BOWEN, J., concurs specially with opinion.