Jason Phillip Fore appeals an order of the Covington Circuit Court directing him to pay $10,337.91 in restitution to, or on behalf of, Martha Jill Holland. We affirm.
Fore pleaded guilty to leaving the scene of an accident resulting in injury, a violation of § 32-10-1, Ala. Code 1975 (count I); reckless driving, a violation of § 32-5A-190 (count III); and attempting to elude a police officer, a violation of § 32-5A-193 (count V). He received a reverse-split sentence for his conviction under count I (two-and-a-half years' probation[1] followed by two years in prison); 90 days in the county jail for his conviction under count III; and six months in the county jail for his conviction under count V. All of the sentences were to run concurrently. In addition, Fore's driver's license was suspended, he was ordered to pay various fines, to participate in various rehabilitation programs, to pay certain costs and fees, and to pay $10,337.91 in restitution — $51.57 to Holland; $172.06 to Holland's doctor; and $10,114.28 to the Alabama Crime Victims Compensation Commission ("ACVCC"), as reimbursement for its payment of funds to Holland.
Fore's convictions arose out of charges stemming from a March 13, 2000, hit-and-run automobile accident involving Holland and her five-year-old daughter. Holland, who had had back surgery before the accident, suffered personal injuries and had to receive medical care as a result of the accident. Between July 19, 2000, and January 22, 2001, Holland received $10,114.28 from the ACVCC to assist her with expenses relating to her injuries. On March 9, 2001, Holland settled a civil action against Fore that she had filed on July 20, 2000; as part of that settlement she received $25,000, representing the limits of Fore's automobile insurance coverage, and she executed a release of liability. Fore entered his guilty pleas on April 19, 2001. A restitution hearing was held on July 16, 2001, where defense counsel argued against the "imposition of restitution at all." (R. 71.)
The trial court entered the following order:
 "This cause came on for a restitution hearing following [Fore's] previously-entered guilty plea. The Court heard the evidence presented and the arguments of the attorneys and based upon the same, the Court finds and Orders as follows:
 "(1) That [Fore] caused the victim in the case, Martha Jill Holland, to suffer monetary loss as a result of his criminal conduct.
 "(2) That as a part of a civil suit arising from the same facts, parties and circumstances, the victim's net recovery from [Fore's] insurance carrier was $14,700.00 after attorney fees and costs were deducted from a settlement in that case for the total of $25,000.00.
 "(3) That a portion of the settlement amount in the civil matter was paid for the pain and suffering of the victim in this cause.
 "(4) That the victim received, or had paid on her behalf, in addition to the civil suit recovery, $10,114.28 from the [ACVCC], which [Fore] should be required to repay as restitution to that entity. *Page 985 
 "(5) That no part of the amount paid by the [ACVCC] was paid for the victim's pain and suffering and that all of that amount was paid for actual expenses of the victim caused by [Fore].
 "(6) That the issue concerning the civil release and its alleged bar against this Court ordering further restitution by [Fore] is resolved in favor of the victim insomuch as this Court finds that this victim was sufficiently damaged to warrant a finding that she is entitled [to] more compensation than was paid in the civil settlement after allowance for a portion of that amount as payment of pain and suffering which cannot be compensated through restitution.
"Therefore, it is, hereby,
 "Ordered that [Fore], in addition to any other fines, costs or assessments previously ordered in this cause, shall pay as restitution in this cause the sums of $51.57 to Martha Jill Holland and $172.06 to Dr. D.E. Salisbury and $10,114.28 to the [ACVCC]. Said amounts shall be paid by [Fore] to the Clerk of this Court for transmittal to said recipient.
 "It is further Ordered that this Court's previous order of June 15, 2001, wherein probation was granted through a reverse-split sentence is not affected by the present order and [Fore] shall make all restitution payments by the date set forth therein."
(C. 180-82.)
Fore does not appeal his convictions. We find the following two issues relating to the restitution order to be dispositive of this appeal: (1) Whether the release executed by Holland as part of the settlement of her civil action barred the trial court from ordering any restitution; and (2) whether Fore was legally obligated to reimburse the ACVCC for its payment to Holland.
Recently, this Court, in Roberts v. State, [Ms. CR-00-2134, November 22, 2002] ___ So.2d ___ (Ala.Crim.App. 2002), held:
 "Based on our examination of the [Restitution to Victims of Crimes Act, § 15-18-65 et seq., Ala. Code 1975], we conclude that restitution is not a claim that belongs to the victim; it is an important measure that the circuit court is statutorily obligated to employ as part of criminal sentencing — a measure that has both salutary remedial and rehabilitative characteristics. Restitution is a part of the criminal sentence rather than merely a debt between the defendant and the victim. Although one of the purposes of restitution is to make the victim whole, payment of restitution also advances the rehabilitative purposes of sentencing. For these reasons, and because the State was not a party to the release between Roberts and the parents, the release did not prevent the circuit court from ordering restitution to the parents. Private parties cannot settle a civil claim and thereby agree to waive the subsequent application of a criminal statute. Our conclusion in this respect is consistent with decisions from other jurisdictions that have considered this issue. See, e.g., State v. Iniguez, 169 Ariz. 533, 821 P.2d 194 (Ariz.Ct.App. 1991); State v. Walters, 224 Wis.2d 897, 591 N.W.2d 874
(Wis.Ct.App. 1999); State v. Applegate, 266 Kan. 1072, 976 P.2d 936 (1999); Abeyta v. State, 42 P.3d 1009
(Wyo. 2002); People v. Maxich, 971 P.2d 268
(Colo.Ct.App. 1998); and State v. Kirby, 818 So.2d 689
(Fla.Dist.Ct.App. 2002). We find the following discussion in People v. Bernal, 101 Cal.App.4th 155, 160-63, 123 Cal.Rptr.2d 622, 625-28 (Cal.Ct.App. 2002), to be particularly persuasive:
 "`Although the record is ambiguous, it appears that the trial court *Page 986 
based its ruling that respondent had satisfied his restitution obligation on the probation report, which stated: "[T]he defendant may be relieved of any restitution owed through probation if the victim signed any waiver forms from defendant's insurance." The trial court received a release signed by Russell "with respondent's name on it."
 "`We agree with appellant's contention that the written release did not abrogate respondent's restitution obligation because (1) a release by a victim cannot waive the People's right to have a defendant pay restitution ordered as part of his sentence, [and] (2) the victim would be in an untenable position if he or she had to reject a settlement offer from a defendant's insurance company that covers only a portion of the victim's losses in order to preserve the uncertain possibility that the full amount might be recovered from the defendant. . . .
"`. . . .
 "`A restitution order has objectives beyond simply indemnifying the victim. It also seeks to rehabilitate the defendant and deter [the] defendant and others. (People v. Crow (1993) 6 Cal.4th 952, 957, 26 Cal.Rptr.2d 1, 864 P.2d 80.) "Among other things, California's restitution law ensures that amends are made to society for a breach of the law, serves a rehabilitative purpose, and acts as a deterrent to future criminality. [Citations.] Restitution `is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine.' [Citations.]" (People v. Moser (1996) 50 Cal.App.4th 130, 135-136, 57 Cal.Rptr.2d 647.)
 "`While a settlement agreement with, and release of, a defendant's insurance company may reflect a victim's willingness to accept the amount paid in full satisfaction for all civil liability, it does not reflect the willingness of the People to accept that sum in satisfaction of the defendant's rehabilitative and deterrent debt to society. A restitution order pursuant to a defendant's plea is an agreement between the defendant and the state. (People v. Pitts (1990) 223 Cal.App.3d 606, 872, 273 Cal.Rptr. 757.) The victim is not party to the agreement, and a release by the victim cannot act to release a defendant from his financial debt to the state any more than it could terminate his prison sentence.
 "`Furthermore, the amount ordered as restitution need not mirror what a victim might obtain in a civil action. "There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action. . . ." (People v. Carbajal (1995) 10 Cal.4th 1114, 1121, 43 Cal.Rptr.2d 681, 899 P.2d 67.) Since the categories of loss recoverable by restitution and the dollar amounts ordered are not identical to the defendant's civil liability, there is no reason that a release of civil liability should release a restitution obligation, just as a satisfied *Page 987 
restitution obligation does not bar a civil action for further damages. . . .
 "`As appellant points out, even the statutory goal of fully reimbursing the victim's losses might be undermined if a civil settlement with a defendant's insurance carrier barred further restitution. A victim might rationally choose to accept an insurance settlement for substantially less than his or her losses rather than risk the uncertain, or even unlikely, possibility that the defendant will pay the entire restitution amount. If a settlement release automatically terminated a defendant's restitution obligation, the victim would lose all possibility of ever being made whole.'
"(Footnotes omitted [in Roberts].)"
___ So.2d at ___.
Therefore, based on Roberts, we hold that the release in the present case did not bar the trial court from ordering restitution to Holland.
The second issue, although couched in terms of whether Fore was legally obligated to reimburse the ACVCC for its payment to Holland,[2]
actually relates more directly to a different issue — an issue this Court discussed but did not reach in Roberts — concerning the amount of restitution that is statutorily authorized when the victim has already received some compensation in a civil proceeding and the approach to be used in determining the appropriate amount of restitution. In the present case, the ACVCC, by virtue of its payment to Holland, was subrogated to her right, pursuant to the trial court's order, to receive restitution from Fore. See § 15-23-14(d), Ala. Code 1975. The record indicates that the ACVCC properly sought to enforce its statutory subrogation right in the criminal-restitution proceedings. Therefore, restated, the dispositive issue is whether the trial court abused its discretion in awarding $10,114.28 in restitution to the ACVCC, on Holland's behalf, pursuant to the Restitution to Victims of Crimes Act, § 15-18-65 et seq., Ala. Code 1975. See Morgan v. State,589 So.2d 1315, 1321 (Ala.Crim.App. 1991), in which this Court, citingClare v. State, 456 So.2d 355 (Ala.Crim.App. 1983), aff'd, 456 So.2d 357
(Ala. 1984), stated that "[t]he particular amount of restitution in a case is a matter which must of necessity be left almost totally to the discretion of the trial judge — that discretion should not be overturned except in cases of clear and flagrant abuse." After reviewing the record, we conclude that the trial court did not abuse its discretion.
Because the issue we did not reach in Roberts is presented in this case, we take this opportunity to specifically adopt the rationale used by the Wisconsin Court of Appeals in State v. Walters, 224 Wis.2d 897,591 N.W.2d 874 (Wis.Ct.App. 1999). We discussed the Wisconsin case inRoberts:
 "As noted initially, the primary purpose of the [Restitution to Victims of Crimes Act, § 15-18-65
et seq., Ala. Code 1975 (`the Act'),] is to effectuate the full compensation of the victim for certain pecuniary damages, as defined in § 15-18-66(2). Obviously the Legislature's objective was to ensure that the *Page 988 
victim could receive full compensation for certain losses as part of the criminal sentencing proceeding. However, in creating a procedure by which to `fully compensate' a victim, the Legislature arguably did not intend for the victim to receive more compensation from the defendant than would actually satisfy the stated goal of full compensation, at least within the limits defined in the Act. Another, and perhaps more difficult question courts in other jurisdictions that have similar restitution acts have recognized concerns the amount of restitution that is statutorily authorized when the victim has already received some compensation in a civil proceeding. By way of example only, we quote from State v. Walters, [224 Wis.2d 897, 591 N.W.2d 874 (Wis.Ct.App. 1999)], in which the Wisconsin Court of Appeals addressed the issue thusly:
 "`In determining the amount of restitution, a court may require a defendant to pay only special damages sustained by the victim, which are substantiated by evidence in the record. A court is prohibited from ordering restitution for any general damages of the victim. Section 973.20(5)(a), Stats.; State v. Stowers, 177 Wis.2d 798, 804-05, 503 N.W.2d 8, 10
(Ct.App. 1993). This limitation restrains the circuit court from assessing restitution for damages intended to generally compensate the victim for such things as pain and suffering, anguish or humiliation. Id. However, any readily ascertainable pecuniary expenditure paid out because of the crime is appropriate as special damages. Id. Medical expenses and lost earnings are types of special damages. Id. at 805, 503 N.W.2d at 10.
 "`A restitution order does not limit or impair the right of a victim to sue for civil damages; however, the amount of restitution paid to a victim in a criminal proceeding may be a setoff against a like amount in the judgment in a companion civil case. See § 973.20(8), Stats.; Olson v. Kaprelian, 202 Wis.2d 377, 383, 550 N.W.2d 712, 715
(Ct.App. 1996). No Wisconsin appellate case has directly addressed whether a payment in a civil case can be a setoff against either the total amount of special damages found by the court or against the amount of restitution ordered at the conclusion of a restitution hearing. The supreme court indicated in [State v.] Sweat[, 208 Wis.2d 409, 561 N.W.2d 695
(1997),] that a setoff is appropriate for the circuit court to consider, but it did not discuss how to apply it. In addressing this choice, we consider where a setoff will best promote the State's dual purposes of achieving its penal objectives and making the victim whole for the special damages sustained. We conclude that those legislative objectives will be best served by applying any setoff which a circuit court determines is appropriate to the total amount of special damages which the victim has sustained.
 "`But how does the circuit court determine whether a setoff of any amount is appropriate? In [State v.] Behnke[, 203 Wis.2d 43, 553 N.W.2d 265 (Ct.App. 1996)], we examined a defense raised to limit the amount of the victim's medical expenses which the defendant could be ordered to pay. We declined to make the reduction Behnke requested because we determined he had the burden of establishing facts sufficient to justify the circuit court's lowering the amount of medical expenses he should be *Page 989 
required to pay, and he had failed to meet that burden. We explained that:
 "`"[B]efore the trial court can accurately assess a defense recognized by our law of civil litigation, the defendant must present a tangible record with which the trial court can exercise its discretion. Here, while Behnke articulated his dual legal theories, he did not point to any specific facts from which the trial court could have grounded the downward adjustment he desired."
 "`Behnke, 203 Wis.2d at 58-59, 553 N.W.2d at 272-73. The allocation of the burden of proof in a restitution proceeding because of payments made in a companion civil proceeding has not been addressed by a Wisconsin appellate court, but it has been addressed by federal courts under the Victim and Witness Protection Act (VWPA), on which Wisconsin's restitution statute is based, in part. For example, in United States v. Sheinbaum, 136 F.3d 443 (5th Cir. 1998), the court concluded that because the defendant had the strongest incentive to litigate whether a setoff should be afforded during a restitution proceeding, the burden of proof on that issue should lie with the defendant. Id. at 448. We find the reasoning of Sheinbaum persuasive. Therefore, based on Behnke and the reasoning from Sheinbaum, we conclude that Walters had the burden of proving facts sufficient to prevail on the defense she raised, that of setoff. Because Olivas suffered general, as well as special damages, that burden required Walters to prove what part, if any, of the $25,000 payment made to Olivas was paid for special damages.
 "`At the restitution hearing on February 6, 1998, the circuit court found that Olivas had proven $40,835.17 in special damages. In reasoning whether some part, or all of the $25,000 should be deducted from that amount, the circuit court stated:
 "`"There is a second issue raised and that is whether the amount of settlement paid previously to the Olivases by Ms. Walters should be deducted in some manner from that total [special damages]. . . .
 "`"You could say that [settlement] money was all applied to the expenses, but it is really, it's kind of mixing apples and oranges."
 "`The circuit court considered whether some of the $25,000 was paid for general damages, which the court found had been incurred, but for which damages the record was insufficient to determine their amount. It also considered whether a setoff of the $25,000 was due against the total amount of Olivas's special damages; or whether a setoff of that payment against some combination of the two types of damages was warranted. It reasoned that because the testimony had established general damages of an indeterminate amount, it would be unfair to make a setoff of the $25,000 settlement entirely against Olivas's special damages.
 "`We conclude the circuit court was correct in refusing to make a setoff. Walters had the burden of proving what portion of the $25,000 payment was made for special damages, because in this case the record before the court showed that Olivas had suffered both general and special damages. However, Walters provided no such proof; therefore, the circuit court had no choice but to conclude that none of the payment should be applied against special damages. *Page 990 
Accordingly, we affirm the $24,000 of restitution ordered.'
 "224 Wis.2d at 905-09, 591 N.W.2d at 877-79 (footnote omitted). For other examples of how appellate courts have approached this issue, see State v. Iniguez, [169 Ariz. 533, 821 P.2d 194 (Ariz.Ct.App. 1991)]; State v. Applegate, [266 Kan. 1072, 976 P.2d 936
(1999)]; State v. Belfry, 416 N.W.2d 811 (Minn.App. 1987); People v. Salas, 42 P.3d 68 (Colo.App. 2001); but see People v. Clifton, 172 Cal.App.3d 1165, 219 Cal.Rptr. 904 (1985)."
___ So.2d at ___.
In adopting the Wisconsin rationale, we note that the allocation of the burden of proof is consistent with the burden of proof that presently exists in cases that do not involve a request to credit a civil settlement or a civil judgment against an amount of pecuniary damages that may be subsequently ascertained in a restitution hearing. See e.g.Morgan v. State, 589 So.2d at 1321, in which this Court noted that the defendant had failed to rebut sufficiently the State's evidence with respect to the amount of restitution that was due the City of Jasper. We also note that in Roberts the State relied on Patterson v. State,518 So.2d 809 (Ala.Crim.App. 1987), in support of its argument that under § 15-18-75, Ala. Code 1975, the appellant was not entitled to offset the amount of restitution by the amount of the settlement paid. To the extent that Patterson is inconsistent with our holding today, it is hereby overruled.
In the present case, the transcript of the restitution hearing reflects that two primary issues were addressed at the restitution hearing — whether Holland had suffered in excess of $25,000 in damage for pain and suffering arising from her injuries and whether Fore was legally obligated to reimburse the ACVCC.[3] The transcript indicates that the attorney who had represented Holland in the settlement of her civil action testified, without objection, that although no part of the $25,000 settlement amount was specifically allocated to satisfy any particular damages claim, e.g., pain and suffering, medical bills, etc., it was nonetheless his opinion that Holland's case would have warranted a settlement of at least $150,000 and that "the most exposure that [Fore] and the insurance company had was on the pain and suffering that [Holland] had on the table and that she could prove." (R. 56.) Holland's attorney testified in pertinent part as follows:
 "[PROSECUTOR]: All right, sir. And you represented the victim here, Martha Jill Holland?
"[HOLLAND'S ATTORNEY]: I did. *Page 991 
 "[PROSECUTOR]: And the defense has — We're here on a restitution issue, and the defense has introduced a general release of claims. Was there any discussion with the defendant or with his attorney regarding whether or not that this compensation was for pain and suffering or that this compensation was to pay for her medical expenses or how it would be affected by her rights as a victim to restitution in the criminal case?
 "[HOLLAND'S ATTORNEY]: Well, we talked about that. And actually, the salient feature of her claim was the pain and suffering. She had ligament injury and soft tissue injury, and that is where she was being treated primarily. And of course, we talked about the value of this case. They only had $25,000 policy limit. And beyond that, to maintain a suit against the individual that had injured her we didn't see any — much point in that, so she got the policy limits. And the salient feature of her claim was the pain and suffering. The case was worth a great deal more than she actually got really.
 "[PROSECUTOR]: Was there any discussion then that she would be releasing him from the requirements of restitution under the criminal procedure?
"[HOLLAND'S ATTORNEY]: No.
 "[PROSECUTOR]: The two cases were not linked — the criminal aspects were not linked to her civil claims?
"[HOLLAND'S ATTORNEY]: No.
 "[PROSECUTOR]: Was there any agreement with the defendant in this case, Mr. Fore, that as a result of the civil claim, she was giving up anything or attempting to give up anything regarding the criminal case?
"[HOLLAND'S ATTORNEY]: No. Absolutely not.
 "[PROSECUTOR]: Was this general release to indicate that she was — that she was to pay Victims Compensation out of her award or that she was responsible in any way as a result of — would in any way relieve him of any duties under the criminal law as a result of this settlement?
"[HOLLAND'S ATTORNEY]: No.
 "[PROSECUTOR]: Was it any way specifically designed to be — to pay her medical expenses or just it was a general sum for her pain and suffering?
 "[HOLLAND'S ATTORNEY]: Well, I thought that the majority of the benefit to her was the pain and suffering. She was still undergoing treatment for that aspect of her injury at the time of the settlement.
". . . .
 "[FORE'S ATTORNEY]: Did you make a letter of demand to the attorneys who were representing Mr. Fore in that civil suit?
 "[HOLLAND'S ATTORNEY]: No. I think they subpoenaed the medical records and when they got those they — They had been offering a considerable amount less than the policy limits. When they got those then they decided it would be most prudent if they paid the policy limits.
 "[FORE'S ATTORNEY]: So you never issued any kind of a letter setting out the damages your client had sustained?
"[HOLLAND'S ATTORNEY]: No.
 "[FORE'S ATTORNEY]: They just evaluated the case on their own and offered you the policy limits?
 "[HOLLAND'S ATTORNEY]: Well, we probably discussed the matter, but I don't think that there's a demand letter. I don't believe so.
 "[FORE'S ATTORNEY]: During your discussions, did you at any time discuss the fact that there were $10,000 in compensatory damages? *Page 992 
"[HOLLAND'S ATTORNEY]: Well, I'm sure we did.
 "[FORE'S ATTORNEY]: Do you — In your mind when you were conversing with your client — and I'm not asking you about those conversations. I'm asking you about your own, in your mind. Excuse me. Did you see this $25,000 settlement as being in part to reimburse her for the compensatory damages?
 "[HOLLAND'S ATTORNEY]: Well, you could attribute it to anything you wanted to. I just said to you that the — that the most exposure that this gentlemen and the insurance company had was on the pain and suffering that this lady had on the table and that she could prove.
 "[FORE'S ATTORNEY]: Was there anything in this general release or in any of the other communications between you and the other attorneys that stipulated that all $25,000 of this was going to be for pain and suffering?
"[HOLLAND'S ATTORNEY]: No.
 "[FORE'S ATTORNEY]: Was it your client's understanding that all $25,000 was going to be for pain and suffering?
 "[HOLLAND'S ATTORNEY]: I don't know what she understood. But it was — it was — the conversation between us in looking to the trial of this case would have been and was that the pain and suffering and the treatment thereof was the most salient feature of her lawsuit, except for the punitive. This case was one that would carry a pretty heavy load of punitive damages, too.
 "[FORE'S ATTORNEY]: During your evaluation of this case, did you review Mrs. Holland's medical records and bills?
"[HOLLAND'S ATTORNEY]: I'm sure I had them.
 "[FORE'S ATTORNEY]: And as you were negotiating with the other side, did you have a figure in your mind that was based on those medical bills?
"[HOLLAND'S ATTORNEY]: Yes.
"[FORE'S ATTORNEY]: So you —
"[HOLLAND'S ATTORNEY]: I had a figure in my mind.
 "[FORE'S ATTORNEY]: And were they — Was that figure based at least in some part on the amount of the medical bills?
 "[HOLLAND'S ATTORNEY]: Primarily based on the pain and suffering and the treatment she was undergoing. But I evaluated this case at not less than $150,000, but the money wasn't there. The pockets weren't there. It was in her best interest to go ahead and get it out of the way.
 "[FORE'S ATTORNEY]: But do you agree that in part you recognize that there were medical bills and that you used the value of those medical bills —
 "[HOLLAND'S ATTORNEY]: There were medical bills that if I tried the case I would put in evidence."
(R. 52-54, 55-58.)
Although Fore thoroughly cross-examined both Holland and her attorney at the restitution hearing, the trial court could have inferred from the testimony of Holland's attorney that Holland had suffered in excess of $25,000 in damage for pain and suffering arising from her injuries and, therefore, that the settlement was not sufficient to compensate Holland for her pecuniary losses that had been paid by the ACVCC.[4] In this respect, the trial court specifically stated in its restitution order *Page 993 
that it found Holland to have been "sufficiently damaged to warrant a finding that she is entitled [to] more compensation than was paid in the civil settlement."[5] (R. 181.) Based on the record before us, we cannot hold that the trial court abused its considerable discretion in concluding that none of the $25,000 settlement amount should be applied against the pecuniary loss suffered by Holland and paid by the ACVCC. Accordingly, we affirm the trial court's restitution order.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.
[1] One of the conditions of his probation was that Fore was ordered to serve eight consecutive weekends in the county jail.
[2] Essentially, Fore argues that, even if the release was not a bar to the State's request for restitution, the $25,000 settlement amount fully compensated Holland. Citing § 15-23-14(a), (b), and (c), Ala. Code 1975, Fore maintains that Holland was legally obligated to reimburse the ACVCC and that the trial court's restitution order resulted in double compensation to Holland. However, as discussed infra, this argument is based on the erroneous premise that the $25,000 settlement amount fully compensated Holland for her pecuniary losses.
[3] The following colloquy is reflected in the record:
 "THE COURT: State of Alabama v. Jason Phillip Fore. Are y'all ready?
"[PROSECUTOR]: Yes, sir.
"THE COURT: Okay.
 "[PROSECUTOR]: This is where we are: We've got a restitution amount, and the fact that these are related to the — to her injuries in this particular case is really not an issue. And I'm going to put her on to testify that these charges are not included in this. And she still has some doctor — supposed to go back to Dr. Boyington, so if it's not in here — but we can kind of limit —
"THE COURT: The issue —
 "[PROSECUTOR]: The issue is whether or not there's been —
"THE COURT: — is whether or not —
 "[PROSECUTOR]: — what's been paid in the civil case should — whether that was pain and suffering or whether it's for this or whether it's for the Court to decide.
 "[FORE'S ATTORNEY]: And also, who's to pay back the Victims Compensation Fund.
"THE COURT: Okay.
"[PROSECUTOR]: State calls Mrs. Holland."
(R. 36-37.)
[4] Fore does not dispute the trial court's finding that Holland actually incurred $10,337.91 in expenses relating to her injuries. Fore argues only that he is not obligated to pay any restitution as a matter of law.
[5] We note that the trial court stated in its order that "a portion of the settlement amount in the civil matter was paid for the pain and suffering of the victim in this cause" (R. 180); however, given the court's reference to the $10,300 in attorney fees and costs that were deducted from the settlement amount, as well as its ultimate finding that Holland had not been compensated for the $10,114.28 that had been paid by the ACVCC, we do not read the court's order as necessarily being internally inconsistent, i.e., by suggesting that a portion of the $25,000 settlement could have been allocated for pecuniary loss while at the same time directing Fore to reimburse the ACVCC for the full amount of its payment to Holland. Instead, considering the testimony presented at the restitution hearing and the trial court's reference to Holland's "net recovery" from the settlement amount (R. 180), we think the trial court was merely recognizing that only a portion of the $25,000 settlement amount would actually go to reimburse Holland for her pain and suffering.